July 6, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

United States Courts
Southern District of Texas
FILED

DEC 1 0 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, | § § § | |
| Plaintiffs, | § § | Civil Action No. |
| v. | § § | Judge |
| ALCOA INC. and ALCOA WORLD ALUMINA L.L.C., | § § § | **V-04- 119** |
| Defendants. | § § § | |

## CONSENT DECREE
## FOR NATURAL RESOURCE DAMAGES

July 6, 2004

# TABLE OF CONTENTS

**Page**

PARTIES' JOINT STATEMENT OF RELEVANT BACKGROUND . . . . . . . . . . . . . . 2
   A.   OPERATING HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B.   REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   C.   NATURAL RESOURCE DAMAGE ASSESSMENT . . . . . . . . . . . . . . . . . . . 3
   D.   EXPLANATION OF THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    NATURAL RESOURCE RESTORATION REQUIREMENTS . . . . . . . . . . . . . . . . . 14

   A.   TRANSFER OF REAL PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   B.   MARSH RESTORATION PROJECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   C.   OYSTER REEF RESTORATION PROJECT . . . . . . . . . . . . . . . . . . . . . . . . 16
   D.   RECREATIONAL PROJECTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.   RESTORATION IMPLEMENTATION AND VERIFICATION . . . . . . . . . . . . . . . . . 17

   A.   RESTORATION PROJECT MANAGER(S) . . . . . . . . . . . . . . . . . . . . . . . . . 17
   B.   LEAD ADMINISTRATIVE TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   C.   RESTORATION ACTIVITY COORDINATION PROCEDURES . . . . . . . . . 18
   D.   MAJOR CORRECTIVE ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
   E.   RESTORATION OF MARSH RESTORATION PROJECT
       FOLLOWING AN EVENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.  PAYMENT OF PAST ASSESSMENT COSTS AND FUTURE COSTS . . . . . . . . . . . 30

VIII. GENERAL NOTICE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

IX.   FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

X.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XI.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

July 6, 2004

XII.   COVENANTS NOT TO SUE BY THE UNITED STATES
        AND THE STATE OF TEXAS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

XIII.   COVENANT NOT TO SUE BY DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XIV.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . 47

XV.   ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XVI.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

XVII.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

XVIII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . 51

XIX   TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

XX.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## EXHIBITS

Exhibit 1 -  Vicinity/Location Map for Project Sites

Exhibit 2  -  Description of Whitmire Property and Identification of Encumbrances

Exhibit 3  -  Marsh Implementation Plan

Exhibit 4  -  Oyster Reef Implementation Plan

Exhibit 5  -  Implementation Plan for Recreational Projects

Exhibit 6  -  DOI/FWS Special Use Permit (for Marsh Project Implementation)

Exhibit 7  -  TGLO Coastal Surface Lease (for Marsh Project Implementation)

Exhibit 8  -  TGLO Coastal Surface Lease (for Oyster Reef Project Implementation)

July 6, 2004

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, | § § § | |
| Plaintiffs, | § § | Civil Action No. |
| v. | § § | Judge |
| ALCOA INC. and ALCOA WORLD ALUMINA L.L.C., | § § § | |
| Defendants. | § § § | |

## CONSENT DECREE
## FOR NATURAL RESOURCE DAMAGES

This Consent Decree is made and entered into by and among Plaintiff United States of America ("United States"), on behalf of the United States Department of the Interior, acting through the United States Fish and Wildlife Service ("DOI/FWS"), and the National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce; Plaintiff State of Texas ("State"), on behalf of the Texas Commission on Environmental Quality ("TCEQ"), formerly known as the Texas Natural Resource Conservation Commission ("TNRCC"), the Texas General Land Office ("TGLO"), and the Texas Parks and Wildlife Department ("TPWD"); Defendant Alcoa Inc., formerly known as Aluminum Company of America ("Alcoa"); and Defendant Alcoa World Alumina L.L.C. ("AWA").

## PARTIES' JOINT STATEMENT OF RELEVANT BACKGROUND

A.    OPERATING HISTORY

1.    Alcoa has operated a site in Point Comfort, Calhoun County, Texas, located on the eastern shore of Lavaca Bay since 1948.  Industrial activities conducted by Alcoa and its lessees at the Point Comfort site have included various manufacturing processes, including alumina refining, aluminum smelting, carbon paste and briquette manufacturing, gas processing, and chlor-alkali processing.  Alcoa transferred ownership but not operational control of the Point Comfort site to its affiliate AWA on December 31, 1994.

2.    The United States and the State assert that industrial activities conducted at the Point Comfort site have resulted in the release of hazardous substances into the environment, including the discharge of mercury into Lavaca Bay.

B.    REGULATORY BACKGROUND

3.    On April 20, 1988, the Texas Department of Health ("TDH") issued an order prohibiting the taking of finfish and crabs from a portion of Lavaca Bay, based on mercury levels in finfish and crabs caught within that area ("Fishing Closure").  On January 13, 2000, the TDH modified its April 30, 1988, order to reduce the area of Lavaca Bay subject to the Fishing Closure.

4.    Pursuant to Section 105 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9605, the U.S. Environmental Protection Agency ("EPA") placed the Alcoa Point Comfort/Lavaca Bay Site ("Site") on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, effective March 25, 1994, 59 Fed. Reg. 8724 (Feb. 23, 1994).

5.      EPA and Alcoa entered into an Administrative Order on Consent ("AOC") on or about March 31, 1994, under which Alcoa conducted a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430, under EPA oversight.   The Remedial Investigation ("RI") Report for the Site was approved by EPA on March 16, 2000, and the Feasibility Study ("FS") Report was approved by EPA on June 18, 2001.

6.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 22, 25 and 26, 2001, and provided an opportunity for public comment on the proposed plan for remedial action.

7.      On or about December 20, 2001, EPA issued its Record of Decision ("ROD"), describing its selection of the remedial action to be implemented at the Site.   Notice of the issuance of the ROD was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

C.      NATURAL RESOURCE DAMAGE ASSESSMENT

8.      NOAA, DOI, TCEQ, TGLO, and TPWD (collectively, "Trustees") have each been designated a natural resource trustee pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f); Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321; and Subpart G of the National Contingency Plan ("NCP"), 40 C.F.R. §§ 300.600 - 300.615 and, under these authorities, the Trustees act on behalf of the public to seek damages for the injury, loss or destruction of natural resources belonging to, managed by, controlled by, or appertaining to the United States, the State, and any local government, resulting from releases of hazardous substances.

9.      Pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f), Section 311 of the CWA, 33 U.S.C. § 1321, and Subpart G of the NCP, 40 C.F.R. §§ 300.600-300.615, the Trustees implemented a natural resource damage assessment ("NRDA") to evaluate the injury, loss or

destruction of natural resources and resource services due to releases of hazardous substances at or from the Site, the response actions conducted at the Site, and the response actions expected to be implemented at the Site.

10.    Alcoa participated in the NRDA process for the Site pursuant to 43 C.F.R. § 11.32(a)(2)(iii).

11.    The assessment of the recreational fishing service losses due to the Fishing Closure and the restoration plan developed to compensate for those losses are identified in the Final Damage Assessment and Restoration Plan and Environmental Assessment for the Point Comfort/Lavaca Bay NPL Site Recreational Fishing Service Losses ("Final Recreational DARP"), dated June 21, 2001, and which was released on November 9, 2001.  66 Fed. Reg. 55650 (November 9, 2001); 26 Tex. Reg. 9312 (November 9, 2001).

12.    The assessment of injuries to natural resources of an ecological nature, including interim ecological service losses, and the restoration plan developed to compensate for those losses are identified in the Final Damage Assessment and Restoration Plan and Environmental Assessment for the Point Comfort/Lavaca Bay NPL Site Ecological Resource Injuries and Service Losses ("Final Ecological DARP") dated June 21, 2001, and which was released on November 9, 2001.  66 Fed. Reg. 56649 (November 9, 2001); 26 Tex. Reg. 9311 (November 9, 2001).

13.    During development of the Final Recreational DARP and the Final Ecological DARP, Alcoa and the Trustees provided opportunities for public participation, including through formal public review and comment periods on the proposed assessment and restoration plans, in accordance with 43 C.F.R. §§ 11.32 and 11.81, 42 U.S.C. §§ 9607(f) and 9611(i), and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*

- 4 -

14.    Each Trustee has incurred costs in connection with the NRDA process associated with this Site. Alcoa has previously provided funding to each Trustee under various agreements, which funding has reimbursed a portion of the costs incurred by each Trustee through December 31, 2003.

D.    **EXPLANATION OF THIS ACTION**

15.    This Consent Decree provides the terms under which Defendants will cause title to the Whitmire Property to be conveyed and, subject to verification by the Trustees, Defendants will implement the Marsh Restoration Project, the Oyster Reef Restoration Project, and the Recreational Projects as described herein, in order to satisfy their liability for Natural Resource Damages resulting from releases of hazardous substances at or from the Site. This Consent Decree also provides for payments by Defendants of Past Assessment Costs and Future Costs.

16.    Contemporaneously with the lodging of this Consent Decree, the United States, on behalf of EPA, DOI/FWS, and NOAA, and the State, on behalf of TCEQ, TGLO, and TPWD, are filing a Complaint in this matter against Defendants pursuant to Sections 104, 106, 107 and 113 of CERCLA, 42 U.S.C. §§ 9604, 9606, 9607, and 9613, and Section 311 of the CWA, 33 U.S.C. § 1321. The State has also asserted claims against Defendants pursuant to Texas law. In the Complaint, the United States and the State seek *inter alia,* Natural Resource Damages, including past and future costs. This Consent Decree and the Consent Decree for CERCLA Response Actions and Response Costs filed contemporaneously herewith resolve all claims alleged in the Complaint.

17.    The Parties recognize that neither the obligation to make payments nor the payment of sums to the Trustees by Defendants nor the agreement by Defendants to implement any action contemplated by this Consent Decree represents an admission of liability or responsibility by Defendants for such Natural Resource Damages. Except as otherwise provided in the Federal Rules

of Evidence, neither this Consent Decree nor the fact of the participation by any Party in this settlement shall be admissible in any judicial or administrative proceeding as evidence of Defendants' liability, including a subsequent proceeding under this Consent Decree.

18.     The United States, the State, and Defendants recognize, and this Court finds, that the Parties have negotiated this Consent Decree in good faith, that implementation of this Consent Decree will expedite the restoration of natural resources and avoid lengthy and protracted litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## I. JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter and of this action pursuant to 28 U.S.C. §§ 1331 and 1345, Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and Section 311(e)(2) of the CWA, 33 U.S.C. § 1321(e)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).  Defendants have voluntarily appeared, and, solely for the purposes of securing entry of and enforcing this Consent Decree, and for the filing of the Complaint, they waive all objections and defenses they may have to the personal and subject matter jurisdiction of this Court and to venue in this District.  Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## II. PARTIES BOUND

20.     This Consent Decree shall apply to and be binding upon and inure to the benefit of the United States and the State and the Defendants and their respective successors and assigns.

Defendants shall provide a copy of this Consent Decree to any successor-in-interest.  Any change

in ownership or corporate status of Defendants, including any transfer of assets or real or personal

property, shall in no way alter Defendants' responsibilities under this Consent Decree, absent the

prior written consent of the Plaintiffs.  If the Plaintiffs approve, a successor-in-interest may perform

some or all of the Restoration Activity required under this Consent Decree, and the Plaintiffs, in their

non-reviewable discretion, may elect to release Defendants from liability for such performance.

21.    Defendants shall provide a copy of this Consent Decree to its Restoration Project

Manager(s), as identified pursuant to Section VI.A herein, shall advise the project representative of

each contractor hired to perform any action related to a Restoration Activity under this Consent

Decree of the pertinent terms of this Consent Decree, and shall include a requirement of conformity

with the pertinent terms of this Consent Decree in all contracts for the performance of any

Restoration Activity.

### III. DEFINITIONS

22.    Unless otherwise expressly provided herein, terms used in this Consent Decree which

are defined in the CWA and CERCLA, and in regulations promulgated under the CWA and

CERCLA, including 43 C.F.R. § 11.14, shall have the meanings assigned to them in such statutes

and regulations.  As used in this Consent Decree, including in the exhibits attached hereto and

incorporated herein, the following definitions shall apply:

a.    "Day" means a calendar day.

b.    "Event" means a storm of tropical depression magnitude or greater, disease

observed both within the Marsh Project Site as well as in other marshes in the

Powderhorn Lake/Indianola vicinity of the Matagorda Bay System, or an oil or chemical spill not caused by Alcoa.

c. "Federal Trustees" means the DOI/FWS and NOAA.

d. "Future Costs" means the reasonable and necessary costs that the Trustees may incur after December 31, 2003, that are recoverable pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C) and 43 C.F.R. § 11.15(a)(3)(ii).

e. "Implementation Plan for Recreational Projects" means the document, attached to this Consent Decree as Exhibit 5, providing for the implementation of the several Recreational Projects, including any modifications to that plan authorized in accordance with the Consent Decree.

f. "Implementation Plans" means the Marsh Implementation Plan attached to this Consent Decree as Exhibit 3; the Oyster Reef Implementation Plan, attached to this Consent Decree as Exhibit 4; and the Implementation Plan for Recreational Projects attached to this Consent Decree as Exhibit 5, individually or, collectively, as indicated by the context.

g. "Lead Administrative Trustee" means the representative of the Trustees designated in accordance with Section VI.B.

h. "Major Corrective Action" or "Major Corrective Actions" means any Restoration Activity identified as a Major Corrective Action in the Marsh Implementation Plan and the Oyster Reef Implementation Plan.

i. "Marsh Implementation Plan" means the document, attached to this Consent Decree as <u>Exhibit 3</u>, providing for the implementation of the Marsh Restoration Project, including any modifications to that plan authorized in accordance with the Consent Decree.

j.. "Marsh Project Site" means the property generally depicted in <u>Exhibit 1</u> and more specifically identified in the Marsh Implementation Plan attached hereto as <u>Exhibit 3</u>.

k. "Marsh Restoration Project" means the restoration project described in the Marsh Implementation Plan.

l. "Natural Resource Damages" means compensatory relief or damages, including the reasonable costs of assessing such damages, that are recoverable pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), or Section 311(f) of the CWA, 33 U.S.C. § 1321(f), or 43 C.F.R. § 11.15, by the Trustees on behalf of the public for injury to, destruction of, loss of, or loss of use of the natural resources or resource services belonging to, managed by, controlled by or appertaining to the United States, the State, or any local government resulting from the release of hazardous substances at or from the Site, the response actions previously conducted at the Site, and the response actions expected to be implemented under the ROD.  The term also includes relief or damages that may be recoverable by the State under Chapter 12, Subchapter D of the Texas Parks & Wildlife Code or Section 7.109 of the Texas Water Code.

m.   "Oyster Reef Project Site" means the property generally depicted in <u>Exhibit 1</u> and more specifically identified in the Oyster Reef Implementation Plan attached hereto as <u>Exhibit 4</u>.

n.   "Oyster Reef Implementation Plan" means the document, attached to this Consent Decree as <u>Exhibit 4</u>, providing for the implementation of the Oyster Reef Restoration Project, including any modifications to that plan authorized in accordance with the Consent Decree.

o.   "Oyster Reef Restoration Project" means the restoration project identified in the Oyster Reef Implementation Plan.

p.   "Party" or "Parties" means the United States and the State of Texas, individually and on behalf of the Trustees, and Defendants Alcoa and AWA, individually, and the United States, State of Texas, and Defendants, collectively, as indicated by the context.

q.   "Past Assessment Costs" means the reasonable and necessary costs of the assessment for the Site incurred by the Trustees prior to or on December 31, 2003, that have not been previously reimbursed or satisfied by Alcoa and that are recoverable pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607 (a)(4)(C) and 43 C.F.R. § 11.15(a)(3).

r.   "Project Site" or "Project Sites" means the property or properties at which one or more Restoration Project is located.  Each of the Project Sites is depicted on the map attached to this Consent Decree as <u>Exhibit 1</u>.

s.     "Recreational Project" or "Recreational Projects" means one or more of the Restoration Projects identified in the Implementation Plan for Recreational Projects.

t.     "Recreation Project Sites" means the properties generally depicted in Exhibit 1 and more specifically identified in the Implementation Plan for Recreational Projects attached hereto as Exhibit 5.

u.     "Restoration Activity" or "Restoration Activities" means the action(s) undertaken to implement a Restoration Project, including construction, planting, monitoring, corrective actions, record keeping, and reporting, as described in this Consent Decree and in each of the Implementation Plans.

v.     "Restoration Projects" means the Marsh Restoration Project, the Oyster Reef Restoration Project, and the several Recreational Projects individually or, collectively, as indicated by the context.

w.     "State" means the State of Texas, and its political subdivisions, departments and agencies.

x.     "State Trustees" means TCEQ, TGLO and TPWD.

y.     "Trustees" means DOI/FWS, NOAA, TCEQ, TPWD, and TGLO, collectively.

z.     "Whitmire Property" means the land situated on the northern shore of Powderhorn Lake and adjacent to the Aransas National Wildlife Refuge ("the Refuge") in Calhoun County, Texas, as more particularly described in Exhibit 2 attached to this Consent Decree.

## IV.  GENERAL PROVISIONS

23.     <u>Objectives of the Parties</u>:  The objectives of the Parties in entering into this Consent Decree are (i) to restore natural resources and resource services that will fully compensate the public for the injury, loss or destruction of natural resources and resource services attributable to releases of hazardous substances at or from the Site, the response actions previously conducted at the Site, and the response actions expected to be implemented under the ROD, (ii) to provide for payments to satisfy claims of each Trustee for Past Assessment Costs and for Future Costs as required by this Consent Decree, and (iii) to resolve the Plaintiffs' claims for Natural Resource Damages.

24.     <u>Restoration Activity Commitment by Defendants</u>.  Defendants shall finance and perform all Restoration Activity required of it by this Consent Decree.

25.     <u>Payment of Past Assessment Costs and Future Costs by Defendants</u>.  Defendants shall pay each Trustee for Past Assessment Costs and Future Costs, as provided in Section VII (Payment of Past Assessment Costs and Future Costs).

26.     <u>Responsibility for Compliance</u>.  Defendants are and shall be solely responsible for compliance with all terms of this Consent Decree.  All Restoration Activity undertaken by Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, and local laws and regulations.  This Consent Decree is not a permit and where any portion of the Restoration Activity requires a federal, state, or local permit or approval, Defendants shall submit a timely and complete application and take all other actions necessary to obtain all such permits and/or approvals. The obligations of Defendants to implement the requirements of this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one Defendant to implement the requirements of this Consent Decree, the remaining

Defendant shall complete all such requirements. Alcoa shall have primary responsibility to fulfill all requirements of this Consent Decree including, but not limited to, financing and performing the Restoration Activity in accordance with this Consent Decree and reimbursing the United States and the State for Past Assessment Costs and Future Costs as provided in this Consent Decree. In the event that Alcoa fails to perform one or more of its obligations under this Consent Decree, the United States or the State, as applicable, shall give notice to AWA of its intention to seek performance under the Consent Decree by AWA. The notice shall state the specific requirements under the Consent Decree that Alcoa has failed to perform and the schedule under which such performance must be completed. If Alcoa has not performed the specific requirements within thirty (30) days of such notice, or reached agreement with the United States or the State on a schedule for performance, or invoked Dispute Resolution pursuant to Section X (Dispute Resolution), AWA shall perform such obligation(s) if the United States or the State so requests in writing. If Alcoa has invoked Dispute Resolution pursuant to Section X (Dispute Resolution) with regard to the obligation(s) at issue, then the thirty (30) day period shall not begin to run until the dispute resolution process has been completed. In the event that the United States or the State invokes its right to request that AWA perform Alcoa's obligations under this Consent Decree, AWA shall assume all rights and responsibilities of Alcoa under this Consent Decree. Invocation by the United States or the State of its right to request that AWA perform Alcoa's obligations under this Consent Decree shall not excuse performance by Alcoa and shall not waive the right of the United States or the State to enforce the requirements of this Consent Decree against Alcoa. AWA shall have the same rights and protections afforded to Alcoa under this Consent Decree.

## V. NATURAL RESOURCE RESTORATION REQUIREMENTS

A.   TRANSFER OF REAL PROPERTY

27.   Defendants shall cause fee simple title to the Whitmire Property (subject to the encumbrances identified in Exhibit 2) to be conveyed to the United States and its assigns by way of a General Warranty Deed, to be administered and managed by the DOI/FWS, no later than the 30th day following the Lead Administrative Trustee's issuance of a Certificate of Project Completion for the Marsh Restoration Project or a subsequent date agreed upon by the Defendants and DOI/FWS. Defendants shall provide notice of the transfer to the Trustees within 10 days of the transfer. If Defendants fail to cause the transfer of title in accordance with this Paragraph, Defendants will assume property management responsibilities for said property until such time as the transfer occurs.

28.   After Defendants transfer the Whitmire Property, the Property will be incorporated into the Aransas National Wildlife Refuge (the "Refuge"), and the DOI/FWS, at its sole cost and expense, will provide for protection and preservation of the ecological services of the Marsh Restoration Project and of the other habitats on the Whitmire Property in its future management of the Refuge.

B.   MARSH RESTORATION PROJECT

29.   The United States, acting by and through the DOI/FWS, has granted Defendants, their contractors and assigns, ingress and egress on, over and across and appropriate use of the Refuge lands, for the purpose of implementing the Marsh Restoration Project, as reflected by the Special Use Permit attached to this Consent Decree as Exhibit 6.

30.   The State, acting by and through the TGLO, has granted Defendants, their contractors and assigns, ingress and egress on, over and across and appropriate use of State land, for the purpose

- 14 -

of implementing the Marsh Restoration Project, as reflected by the Coastal Surface Lease attached to this Consent Decree as Exhibit 7.

31.    Defendants and the Plaintiffs shall allow each other access over and across the Whitmire Property and other Refuge lands, in accordance with the Special Use Permit (Exhibit 6) issued by DOI/FWS, and State lands, in accordance with the Coastal Surface Lease (Exhibit 7) issued by TGLO, as reasonably necessary to inspect and/or verify Restoration Activities undertaken for the Marsh Restoration Project.

32.    Defendants shall perform the Restoration Activity described in the Marsh Implementation Plan at the Marsh Project Site, in accordance with the provisions of Section VI (Restoration Implementation and Verification).

33.    Defendants shall have fully performed its obligation to implement the Marsh Restoration Project under this Consent Decree upon the earlier of the following:

    (a)    issuance of the Certification of Project Completion of the Marsh Restoration Project as provided under the Marsh Implementation Plan and Paragraph 50 of this Consent Decree, or

    (b)    seven (7) years after the Lead Administrative Trustee issues the Certification of Construction Completion of Marsh Restoration Project, as provided under the Marsh Implementation Plan and Paragraph 47 of the Consent Decree.

However, if an Event occurs prior to the occurrence of the earlier of (a) or (b) above, Defendants shall also address the Event in accordance with Section VI.E, and Defendants will not have fully performed their obligations to implement the Marsh Restoration Project until the Lead

Administrative Trustee issues a Certification of Completion of Restoration Activities for an Event under Paragraph 69.

C.    OYSTER REEF RESTORATION PROJECT

34.    The State, acting by and through the TGLO, has granted Defendants, their contractors and assigns, ingress and egress on, over and across and appropriate use of state land, for the purpose of implementing the Oyster Reef Restoration Project, as reflected by the Coastal Surface Lease attached to this Consent Decree as Exhibit 8.

35.    Defendants shall perform the Restoration Activity described in the Oyster Reef Implementation Plan at the Oyster Reef Project Site, in accordance with the provisions of Section VI.A-D.

36.    Defendants shall have fully performed their obligation to implement the Oyster Reef Restoration Project under this Consent Decree upon the earlier of the following:

(a)    upon the issuance of the Certification of Project Completion of the Oyster Reef Restoration Project as provided under the Oyster Reef Implementation Plan and Paragraph 50 of this Consent Decree, or

(b)    four (4) years after the Lead Administrative Trustee, on behalf of the Trustees, issues the Certification of Construction Completion of Oyster Reef Restoration Project, as provided under the Oyster Reef Implementation Plan and Paragraph 47 of this Consent Decree.

D.    RECREATIONAL PROJECTS

37.    Defendants shall obtain all real property permits, leases and/or other agreements necessary to implement the Recreational Projects.

38.     Defendants shall perform the Restoration Activity described in the Implementation Plan for the Recreational Projects at each Project Site for each Recreational Project, in accordance with the provisions of Section VI.A-C.

39.     Defendants shall have fully performed their obligation to implement the Recreational Projects under this Consent Decree upon issuance of the Certification of Project Completion of the Recreational Projects as provided under the Implementation Plan for Recreational Projects and Paragraph 50 of this Consent Decree.

## VI.  RESTORATION IMPLEMENTATION AND VERIFICATION

### A.     RESTORATION PROJECT MANAGER(S)

40.     Within 30 days after entry of this Consent Decree, Defendants shall provide a written notice to the Trustees designating a Restoration Project Manager for each of the Restoration Projects. The person or persons so designated will be responsible for supervising or directing the Restoration Activities necessary to implement such Restoration Project in accordance with the terms of this Consent Decree, including coordination with the Lead Administrative Trustee for such Restoration Project.  Defendants may subsequently change a designated Restoration Project Manager(s) by providing written notice to the Lead Administrative Trustee.

### B.     LEAD ADMINISTRATIVE TRUSTEE

41.     TPWD, acting through the following representative, will serve as the Lead Administrative Trustee for the Trustees under this Consent Decree:

- 17 -

Don Pitts
TPWD
Trustee Assessment & Restoration Program
4200 Smith School Road
Austin, Texas 78744
phone:  (512) 912-7154
fax: (512) 912-7160
E-mail: Don.Pitts@tpwd.state.tx.us

The Lead Administrative Trustee will coordinate Trustee review and, following approval of the

Trustees, will provide Defendants notice, comment, and certification in accordance with the

procedures specified in this Consent Decree.  The Trustees may change the Lead Administrative

Trustee by providing written notice to Defendants.

C.     RESTORATION ACTIVITY COORDINATION PROCEDURES

42.     The Trustees will review submittals provided by Defendants to the Lead

Administrative Trustee, participate in meetings among themselves and with Defendants, participate

in inspections of the Project Sites, and undertake or participate in any other activity that is necessary

or appropriate to evaluate and verify Restoration Project performance, to timely identify and address

problems or conditions which may require further action under this Consent Decree, and to verify

Restoration Project completion.

43.     General Provisions:  At all times during the implementation of the Restoration

Projects under this Consent Decree, the following shall apply:

(a)     Defendants shall be responsible for coordinating its activities with the Lead

Administrative Trustee.

(b)     Whenever Defendants are required to submit any data, information, or report,

or to provide notice to the Trustees, Defendants shall provide a copy of such

data, information, report, or notice to the Lead Administrative Trustee in

- 18 -

writing by mail and in an electronic format (to the extent that electronic versions are reasonably available).  If an electronic format is not available, Defendants shall provide five (5) copies of the document to the Lead Administrative Trustee.

(c)     The Lead Administrative Trustee and other Trustees have a right, upon reasonable notice to Defendants, to be present at all times that Defendants are performing any Restoration Activity at any Project Site under this Consent Decree, but the failure of the Lead Administrative Trustee to be present shall neither be a cause for delay, suspension, or cessation of such activity, nor shall such failure to be present of itself render any activity performed by Defendants inconsistent with this Consent Decree or with the Implementation Plans.  The requirement to provide reasonable advance notice applies only to visits to the Project Sites by Trustees, the primary purpose of which is to observe or otherwise verify Defendants' performance under this Consent Decree.   If a Trustee visits the Project Site in its capacity as owner, reasonable notice is not necessary.

(d)     Defendants shall provide general notice to the Lead Administrative Trustee at least 10 days before the date it initiates the construction of each Restoration Project, and at least 10 days before it initiates planting at the Marsh Restoration Project.

(e)     The Lead Administrative Trustee, on behalf of the Trustees, has the right to reject any report submitted by Defendants which is inaccurate or fails to

include the information required of it by the terms of the Implementation

Plans or this Consent Decree.

(f)     The Lead Administrative Trustee, on behalf of the Trustees, has the right to

seek information from Defendants required to be provided under the terms

of the Implementation Plans, and to issue directions or notices to Defendants

consistent with the terms of the Implementation Plans and other terms of this

Consent Decree, including to require Defendants to undertake a Major

Corrective Action or a Restoration Activity relating to an Event.

(g)     Where no specified date is stated for submittal of a document to the Lead

Administrative Trustee, such document shall be submitted within 60 days of

the occurrence or activity for which that document is required to be submitted

to the Lead Administrative Trustee.

(h)     The Trustees shall have the right to request a joint inspection of a Restoration

Project, and to the extent access to a Project Site is within Defendants'

control, the Trustees shall have a right to inspect any Project Site at

reasonable times.

(i)     The Restoration Activity time frames specified in this Consent Decree may

be extended in writing by the Lead Administrative Trustee, on behalf of the

Trustees, subject to Section XVII (Modification) of this Consent Decree.

(j)     Defendants shall have the right to invoke dispute resolution, as provided in

Section X (Dispute Resolution).

44.     Nothing in this Section is intended to preclude Defendants and the Trustees from developing additional practices or procedures for efficiently coordinating with each other with respect to Defendants' actions under this Consent Decree, provided these practices or procedures are mutually agreed to and are not inconsistent with the terms of this Consent Decree.

45.     <u>Construction</u>:  Defendants shall commence construction of each Restoration Project in accordance with the schedule identified for its respective Implementation Plan and pursue such construction until completion.

46.     <u>Post-Construction Report</u>: Defendants shall provide the Lead Administrative Trustee with a project-specific, post-construction report (the "Post-Construction Report") for each of the Restoration Projects within 60 days of completing all construction activities necessary to implement that Restoration Project.  For each Restoration Project, the Post-Construction Report shall include information documenting that all construction criteria and other activities necessary for the Restoration Project construction have been completed in accordance with the requirements of the Implementation Plans. The Post-Construction Report shall provide the Lead Administrative Trustee with an opportunity to request a joint inspection of the Restoration Project Site to occur within 30 days of receipt of the report for the purpose of verifying the information contained in the report.

47.     <u>Certification of Construction Completion</u>:  Within 60 days of receipt of the Post-Construction Report, or the conduct of any joint inspection requested by the Lead Administrative Trustee under Paragraph 46, whichever is later, the Lead Administrative Trustee, on behalf of the Trustees, shall provide written notice to Defendants either certifying the completion of construction of such Restoration Project, or rejecting the Post-Construction Report under Paragraph 43(e) and

requesting a meeting with Defendants to discuss the basis for the rejection and whether additional action is needed.

48.     <u>Major Corrective Action</u>:  Implementation of a Major Corrective Action during monitoring of the Marsh Restoration Project and the Oyster Reef Restoration Project shall be in accordance with the applicable Implementation Plan and the procedures for review and implementation of such action as identified in Section VI.D below.

49.     <u>Project Completion Report</u>:  Defendants shall provide the Trustees with a project-specific project-completion report (the "Project Completion Report") for each of the Restoration Projects within 60 days of completing all activities necessary to implement that Restoration Project. For each Restoration Project, the Project Completion Report shall include information, or shall reference information previously submitted, documenting that all activities have been completed in accordance with the requirements of the Implementation Plans and this Consent Decree. The Project Completion Report for all of the Recreational Projects shall be submitted after completion of the use surveys, required by the Implementation Plan for the Recreational Projects. The Project Completion Report for the Marsh Restoration Project shall be submitted after completion of all required Restoration Activities, including the Restoration Activities required for any Event, pursuant to Section VI.E. The Project Completion Report shall provide the Lead Administrative Trustee with an opportunity to request a joint inspection of the applicable Restoration Project Site for the purpose of verifying the information contained in the report, with the inspection to occur within 30 days of receipt of the Report.

50.     <u>Certification of Project Completion</u>:  Within 60 days of receipt of the Project Completion Report or of any joint inspection requested by the Lead Administrative Trustee under

- 22 -

Paragraph 49, whichever is later, the Lead Administrative Trustee, on behalf of the Trustees, shall provide a written notice to Defendants either certifying the completion of such Restoration Project, or rejecting the Project Completion Report under Paragraph 43(e) and requesting a meeting with Defendants to discuss the basis for the rejection and whether additional action is needed.

51.    <u>Certification of Completion of Restoration Activity Obligations</u>: The Lead Administrative Trustee, on behalf of the Trustees, shall provide written notice to Defendants certifying that Defendants has no further Restoration Activity obligations under the Consent Decree within 60 days after Defendants have fully performed its obligations, as described in Paragraphs 33, 36, 39, and, if applicable, 69.

52.    <u>Final Certification of Completion of All Restoration Projects</u>: Within 60 days after the Lead Administrative Trustee has certified Defendants' completion of all of the Restoration Projects, pursuant to Paragraph 51, any Party may file with the Court a copy of the written Certification of Completion of all Restoration Activity Obligations.

D.    <u>MAJOR CORRECTIVE ACTIONS</u>

53.    The Oyster Reef Implementation Plan and the Marsh Implementation Plan specify Restoration Project conditions or circumstances which may give rise to Major Corrective Actions to be implemented by Defendants, which actions are subject to the limitations set forth in the Marsh Implementation Plan and the Oyster Reef Implementation Plan. No Major Corrective Action shall be undertaken after Certification of Completion of Construction, except as provided in this Section VI.D.

54.    When either Defendants or the Lead Administrative Trustee, on behalf of the Trustees, provides written notice that a Major Corrective Action is necessary, within 45 days of that

notice, Defendants shall submit a Major Corrective Action Plan to the Lead Administrative Trustee for review by the Trustees, or if Defendants dispute the Trustees' directive, it shall proceed in accordance with Section X (Dispute Resolution).

55.    The following information, at a minimum, shall be included in any Corrective Action Plan submitted to the Lead Administrative Trustee:

(a)    A description of the condition(s) or circumstance(s) to be addressed by the Major Corrective Action;

(b)    An analysis of the cause(s) for such condition(s) or circumstance(s) to the extent such information is reasonably known to Defendants;

(c)    The action(s) and/or monitoring activities proposed to be undertaken to rectify, resolve or otherwise address such condition(s) or circumstance(s);

(d)    An analysis or evaluation of the efficacy of the proposed activities in light of other relevant conditions at the Project Site;

(e)    Copies, or citations to copies provided to the Lead Administrative Trustee in the past, of any permits, leases, special use or other agreements necessary to implement the proposed activities; and

(f)    Any additional information deemed necessary by Defendants to the consideration of the proposed Major Corrective Action.

56.    After Trustee review, the Lead Administrative Trustee will approve the Corrective Action Plan unless it finds that there is insufficient information to make a determination or that such plan is not a reasonable means to address the underlying conditions or circumstances. In the event the Lead Administrative Trustee does not approve the Corrective Action Plan, Defendants shall,

within 30 days of receipt of notice of disapproval, submit the additional information or modification of the proposed Corrective Action Plan, or dispute the need for such additional information or plan modification(s).

57.     Where the provisions of Section X (Dispute Resolution) of this Consent Decree are invoked, the revised Corrective Action Plan, or modifications requested by the Lead Administrative Trustee thereto, if required at the conclusion of the dispute resolution process, must be submitted within 30 days from the final determination under Section X (Dispute Resolution).

58.     Upon written approval by the Lead Administrative Trustee, on behalf of the Trustees, or a final determination under Section X (Dispute Resolution), Defendants shall proceed to implement the activities in the Corrective Action Plan in accordance with the schedule provided therein.

59.     Within 30 days of completion of all activities outlined in the Corrective Action Plan (excluding on-going monitoring activities, if any), Defendants shall inspect the Project Site and within 30 days of such inspection shall submit a Corrective Action Report to the Lead Administrative Trustee describing its compliance with the Corrective Action Plan, including observed trends towards attainment of the criteria specified in the applicable Implementation Plan.

60.     Within 15 days of receipt of the Corrective Action Report or of the date of a Trustee inspection, which will occur no later than 30 days after receipt of the Report, whichever is later, the Lead Administrative Trustee, on behalf of the Trustees, will provide a written notice to Defendants either approving completion of the activities outlined in the Corrective Action Plan (excluding on-going monitoring activities, if any) or, finding that the Report does not contain the information required by the Corrective Action Plan or that the activities undertaken are not in material

compliance with the approved Corrective Action Plan, and requiring Defendants to undertake such activities as are necessary to achieve compliance with the approved Corrective Action Plan.

61.    Defendants shall conduct any additional monitoring required by the approved Corrective Action Plan and the results of such monitoring shall either be reported to the Lead Administrative Trustee within 60 days as a separate Corrective Action Report or as part of the next scheduled monitoring report for that Restoration Project, whichever is earlier.

62.    Defendants' obligation to undertake Major Corrective Actions for the Marsh Restoration Project shall end upon the fulfillment of the non-Event related requirements of Paragraph 33(a) or (b), whichever is earlier.  If an Event occurs prior to the fulfillment of the non-Event related requirements of paragraph 33(a) or (b), Defendants shall undertake additional Restoration Activities to address damage to the Marsh Restoration Project caused by the Event, in accordance with Section VI.E. Defendants' obligation to undertake Major Corrective Actions for the Oyster Reef Restoration Project shall end upon fulfillment of the requirements of Paragraph 36.

E.    RESTORATION OF MARSH RESTORATION PROJECT FOLLOWING AN EVENT

63.    In accordance with the provisions of this Section VI.E, Defendants shall undertake additional Restoration Activities to address damage to the Marsh Restoration Project caused by an Event that occurs after an inspection that demonstrates that at least 50% of the plants have survived at the end of the first growing season and before the fulfillment of the non-Event-related requirements of Paragraph 33(a) or (b), whichever is earlier.  Defendants' obligation to undertake additional Restoration Activities to address all Event-related damage to the Marsh Restoration Project shall not exceed $350,000.00.

64.   <u>Event Report</u>: Within 30 days of the occurrence of an Event, Defendants shall inspect the Marsh Project Site and submit an Event Report to the Lead Administrative Trustee, which shall include, at a minimum, a description of the Event, its effect on the Marsh Project Site, any information upon which Defendants have relied in determining that an Event occurred, and any potential effect on the Project Site requiring restoration.

65.   <u>Event Determination</u>:  Within 15 days of receipt of the Event Report, or of the date of an inspection by the Trustees to occur no later than 30 days of receipt of an Event Report, whichever is later, the Lead Administrative Trustee, on behalf of the Trustees, will notify the Restoration Project Manager in writing whether or not the Trustees agree that an Event has occurred. Where the Trustees determine that an Event has not occurred, any further action at the Marsh Project Site is governed by Section VI.D (Major Corrective Action) unless Defendants dispute the determination pursuant to Section X (Dispute Resolution).  If the Lead Administrative Trustee, on behalf of the Trustees, indicates its concurrence that an Event has occurred, Defendants shall submit an Event Work Plan.

66.·   <u>Event Work Plan</u>: Within 30 days of a final determination that an Event has occurred and that a Restoration Activity is required, Defendants shall submit a draft Event Work Plan to the Lead Administrative Trustee which provides the following information:

(a)   A description of Restoration Activities that may be appropriate to address the Event-related damage,

(b)   An evaluation of the alternatives, and the rationale for selecting the proposed Restoration Activity, and

      (c)     A detailed estimate of the actual cost to undertake the proposed Restoration

Activity.

The draft Event Work Plan shall be submitted and reviewed in accordance with the provisions

established for Major Corrective Actions in Section VI.D. If the Trustees determine that the

estimated costs to undertake the Restoration Activities identified in an Event Work Plan, added to

the actual costs approved under Paragraph 70 for past Restoration Activities undertaken for an Event,

will result in Defendants exceeding the monetary limit of $350,000.00 in combined actual costs of

Restoration Activities, the Lead Administrative Trustee, on behalf of Trustees, may require

Defendants to partially perform the Event Work Plan or to pay the Trustees an amount equal to its

residual financial obligation under this Section VI.E for use by the Trustees to undertake activities

appropriate to the restoration of the Marsh Restoration Project.

     67.    <u>Performance of Restoration Activities</u>: All Restoration Activities under Section VI.E

shall be carried out by Alcoa based on an Event Work Plan, including an estimated budget, approved

by the Lead Administrative Trustee, on behalf of the Trustees, or subject to a final determination

under Section X (Dispute Resolution). Alcoa shall proceed with performance in accordance with

the schedule identified in the approved Event Work Plan.

     68.    <u>Event Restoration Report</u>: An Event Restoration Report shall be submitted and

reviewed in accordance with the procedures for Corrective Action Reports in Section VI.D. Such

Report shall include information documenting that all Restoration Activities were carried out by

Alcoa in accordance with the approved Event Work Plan and shall further include:

      (a)     The actual cost incurred by Defendants to perform the Restoration Activity,

with all supporting cost documentation,

        (b)     If the actual cost exceeded the estimated cost by more than 10%, an explanation of the basis for the difference between Defendants' cost estimate. and the actual costs of the Restoration Activity.

The "actual costs" which Defendants may be credited under Section VI.E is limited to the reasonable and necessary costs and expenses incurred directly by Defendants to design and implement the Restoration Activities identified in the approved Event Work Plan. Such costs shall not include Defendants' costs to prepare an Event Report and Event Restoration Report or to compile or present any information under Section VI.E for review and approval by the Trustees (other than the Event Work Plan).

69.    <u>Certification of Completion of Restoration Activities for Event</u>: Within 15 days of receipt of the Event Restoration Report, or the conduct of any joint inspection requested by the Lead Administrative Trustee under Paragraph 43(h), whichever is later, the Lead Administrative Trustee, on behalf of the Trustees, will provide written notice to Defendants certifying the completion of the Restoration Activities required by the approved Event Work Plan, finding the Event Restoration Report does not contain the information required by the Event Work Plan, or finding that the activities undertaken are not in material compliance with the approved Event Work Plan. Within 30 days of the receipt of the notice of rejection, Defendants shall provide additional information, agree to undertake additional Restoration Activities in order to meet the Event Work Plan, or dispute the Lead Administrative Trustee's determination. The Lead Administrative Trustee, on behalf of the Trustees, will certify the completion of the Restoration Activities for an Event if (i) Defendants have satisfactorily completed Restoration Activities that are appropriate to address the Event-related

damage, or (ii) the Trustees confirm that the combined total actual costs incurred by Defendants under Section VI.E equal or exceed $350,000.00.

70.    Determination of Cost Credit: Defendants shall be credited for the actual cost to carry out all Restoration Activities approved as completed based on the cost information and documentation provided by Defendants with its Event Restoration Report. Within 45 days of receipt of Defendants' cost documentation, the Lead Administrative Trustee, on behalf of the Trustees, will identify the amount of such credit in writing to the appropriate Restoration Project Manager. Within 45 days of receipt of each such notice from the Lead Administrative Trustee, Defendants shall provide the Trustees an accounting showing the amount remaining for future Event-related Restoration Activities under Section VI.E of the Consent Decree.

71.    End of Obligation Due to an Event. Defendants' obligation to undertake any additional Event-related activities terminates when the Lead Administrative Trustee confirms either (1) that the combined total actual costs incurred by Defendants under this Section equal or exceed the $350,000.00 limit specified in Paragraph 63, (2) upon the fulfillment of the non-Event related requirement of Paragraph 33(a), or (3) upon the fulfillment of the non-Event related requirement of Paragraph 33(b), whichever occurs first.

## VII. PAYMENT OF PAST ASSESSMENT COSTS AND FUTURE COSTS

72.    In addition to funds previously paid by Alcoa to the Federal Trustees, within 30 days of entry of this Consent Decree, Defendants shall pay the following sums to each Federal Trustee, in accordance with the specified procedure for payment, in order to fully satisfy the claims of the Federal Trustees for Past Assessment Costs:

a.   DOI/FWS: The Defendants shall make payment by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in the amount of $19,692 within 30 days of the entry of this Consent Decree or within 30 days of Defendants' receipt of wiring instructions from the United States Attorney's Office for the Southern District of Texas, whichever is later. Any payment received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day. The payment shall reference "USAO File Number 2004V00667, DOJ case number 90-11-3-655/1," and the additional notation, "NRDAR Account No. 14X5198, payment for Point Comfort/Lavaca Bay NPL Site."

Notice of the payment also shall be sent to the following:

Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attn: Restoration Fund Manager
1849 C. Street, NW, Mailstop 4449
Washington, D.C.  20240

Martin Steinmetz, Esq.
Office of the Field Solicitor
U.S. Department of the Interior
7906 E. 33rd St., Suite 100
Tulsa, OK  74145

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Dept. of Justice
P.O. Box 7611
Washington, DC  20044-7611
re:  DJ# 90-11-3-655/1

b.  NOAA: The Defendants shall make payment by FedWire EFT to the U.S. Department of Justice account in the amount of $632,433 within 30 days of the entry of this Consent Decree or within 30 days of Defendant's receipt of wiring instructions from the United States Attorney's Office for the Southern District of Texas, whichever is later.  Any payment received by the Department of

Justice after 4:00 p.m. Eastern Time shall be credited on the next business day. The payment shall

reference "United States and the State of Texas v. Alcoa Inc. et al.; USAO File Number

2004V00667;  DOJ case number 90-11-3-655/1; "Point Comfort/Lavaca Bay NPL Site–NOAA's

DARRF."

      Notice of the payment also shall be sent to the following:

          NOAA/NOS/OR&R
          ATTN:  Kathy Salter
          1305 East West Highway
          SSMC 4, Room 10139
          Silver Spring, MD  20910-3281

          NOAA Office of General Counsel
          Attn: Stephanie Fluke
          9721 Executive Center Dr. N., Suite 137
          St. Petersburg, FL 33702

          Chief
          Environmental Enforcement Section
          Environment and Natural Resources Division
          U.S. Dept. of Justice
          P.O. Box 7611
          Washington, DC  20044-7611
          re:  DJ# 90-11-3-655/1

      73.    In addition to funds previously paid by Alcoa to the State Trustees, within 30 days

of entry of this Consent Decree, Defendants shall pay by certified check the amount of $133,071.46

payable to the "State of Texas" and mailed to Chief, Natural Resource Division, Office of the

Attorney General, P. O. Box 112548, Austin, TX 78711, with notice of payment provided to the

Trustee representatives designated below.  The check shall bear the identifying number: AG#91-

37803.  The proceeds shall be allocated to the State Trustees in order to fully satisfy the claims of

the State Trustees for Past Assessment Costs as follows:

      a.    Texas Parks and Wildlife Department:  $21,046.66

Notice of payment also shall be sent to:

> Texas Parks and Wildlife Department
> Don Pitts
> 4200 Smith School Road
> Austin, TX 78744

    b.    Texas Commission on Environmental Quality: $112,024.80

Notice of payment also shall be sent to:

> Texas Commission on Environmental Quality
> Richard Seiler, MC142
> P. O. Box 13087
> Austin, TX 78711-3087

    74.    Following the entry of this Consent Decree, in order to fully satisfy the claims of the Federal Trustees and the State Trustees for Future Costs, Defendants shall pay the sum of $195,000.00 by FedWire Electronic Funds Transfer ("EFT") to an account established within DOI's Natural Resource Damage Assessment and Restoration Account and shall reference "Agency Location Code No. 14010001, NRDAR Account No. 14X5198, payment for Point Comfort/Lavaca Bay NPL Site." Payment shall be made in accordance with current EFT procedures within 30 days of receipt of wiring instructions from DOI. Any payment received by DOI after 4:00 p.m. Eastern Time shall be credited on the next business day. The payment also shall reference "*United States and the State of Texas v. Alcoa Inc. et al.*; USAO File Number: 2004V00667; DOJ case number 90-11-3-655/1."

## VIII. GENERAL NOTICE REQUIREMENTS

    75.    In addition to the notice requirements specified in Sections VI (Restoration Implementation and Verification) and VII (Payment of Past Assessment Costs and Future Costs), Defendants shall provide notices of all payments, all written documents pertaining to Force Majeure,

and all written documents pertaining to Dispute Resolution to the Assistant Attorney General at the Address specified below, unless his successor(s) give notice of a change to the other Parties in writing.

As to the State of Texas Attorney General:

Albert Bronson
Assistant Attorney General
Natural Resource Division
Texas Office of Attorney General
P. O. Box 12548, Capitol Station
Austin, TX 78711-2548

76.    In addition to the notice requirements specified in Sections VI (Restoration Implementation and Verification) and VII (Payment of Past Assessment Costs and Future Costs), Defendants shall provide notices of all payments, all written documents pertaining to the transfer of the Whitmire Property, Force Majeure, Dispute Resolution, Events, requests for Certification of Project Completion, requests for Final Certification of Completion of All Restoration Projects, and any modification that materially alters a Restoration Project to the United States Department of Justice, at the address specified below.

As to the United States Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P. O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
DJ # 90-11-3-655/1

77.    In addition to the notice requirements specified in Sections VI (Restoration Implementation and Verification) and VII (Payment of Past Assessment Costs and Future Costs),

Defendants shall provide either by electronic format or by mail, notice of all transmittals, without

the technical document, to the following individuals at the addresses specified below, unless her or

his successors give notice of a change to the other Parties in writing.

> Stephanie Fluke
> NOAA Office of General Counsel
> 9721 Executive Center Dr. N., Suite 137
> St. Petersburg, FL 33702
> e-mail: Stephanie.Fluke@noaa.gov

> Martin Steinmetz
> Attorney
> Department of Interior, Office of the Solicitor
> Tulsa Field Solicitor's Office
> 7906 East 33rd Street, Suite 100
> Tulsa, Oklahoma 74145

> Carol Lear
> Texas Commission on Environmental Quality
> 12100 Park 35 Circle, Bldg. A.
> Mail Code 173
> Austin, TX 78753
> e-mail: clear@TCEQ.state.tx.us

> Raenell Silcox
> Attorney
> Texas Parks & Wildlife Department
> 420 Smith School Road
> Austin, TX 78744
> e-mail: raenell.silcox@tpwd.state.tx.us

> Jane Sarosdy
> Texas General Land Office
> Legal Services Division
> P. O. Box 12873
> Austin, TX 78711-2873
> e-mail: Jane.Sarosdy@glo.state.tx.us

78.    The United States and the State shall provide all notices, determinations,

certifications, and decisions to be submitted to the Defendants via mail and electronic media to the

following representatives, unless his or her successor give notice of a change to the other Parties in writing:

> As to Alcoa:
>
> Alcoa Inc.
> c/o Legal Department
> Alcoa Inc.
> 201 Isabella Street
> Pittsburgh, PA  15212-5858
>
> and
>
> the Restoration Project Manager (designated in accordance with Section VI.A of this Consent Decree)
>
> and
>
> Pamela M. Giblin
> Derek R. McDonald
> Baker Botts L.L.P.
> 1500 San Jacinto Center
> 98 San Jacinto Blvd.
> Austin, Texas 78701-4039
>
> As to AWA:
>
> Alcoa World Alumina L.L.C.
> c/o Legal Department
> Alcoa Inc.
> 201 Isabella Street
> Pittsburgh, PA  15212-5858.

79.    All notices and submissions shall be considered effective upon receipt, unless otherwise provided.   Written notice as specified herein and in Sections VI (Restoration Implementation and Verification) and VII (Payment of Past Assessment Costs and Future Costs) shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the Parties.

## IX. FORCE MAJEURE

80.     "Force majeure," for purposes of this Consent Decree, is defined as any circumstance arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the scheduled performance of any obligation under this Consent Decree despite Alcoa's best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (1) as it is occurring and (2) following the potential force majeure, such that the delay is minimized to the greatest extent practical.  "Force Majeure" does not include financial inability to complete a Restoration Project or a failure (not itself caused by an event of force majeure) to satisfy the requirements of the Implementation Plans.  "Force Majeure" does include a FWS requirement that Alcoa cease construction because of the presence of an endangered species.

81.     If any circumstance occurs or has occurred that may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by force majeure, Defendants shall orally notify the Lead Administrative Trustee within 48 hours following the time that Alcoa first knew that the circumstance might cause a delay.  Within five (5) days thereafter, Defendants shall provide in writing to the Lead Administrative Trustee a description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for the implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and Defendants' rationale for attributing such delay to a force majeure if they intend to assert such a claim and a statement as to whether, in the opinion of Defendants, such circumstance may cause or contribute to an endangerment to public health, welfare or the