opportunity for review and comment by the State, determines at any time that the financial

assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within 30

days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of

the other forms of financial assurance listed in Paragraph 48 of this Consent Decree. Settling

Defendants' inability to demonstrate financial ability to complete the Work shall not excuse

performance of any activities required under this Consent Decree.

50. If Settling Defendants can show that the estimated cost to complete the remaining

Work has diminished below the amount set forth in Paragraph 48 above after entry of this

Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent

Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security

provided under this Section to the estimated cost of the remaining work to be performed.

Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the

requirements of this Section, and may reduce the amount of the security upon approval by EPA.

In the event of a dispute, Settling Defendants may reduce the amount of the security in

accordance with the final administrative or judicial decision resolving the dispute.

51. Settling Defendants may change the form of financial assurance provided under this

Section at any time, upon notice to and approval by EPA, after consultation with the TCEQ,

provided that the new form of assurance meets the requirements of this Section. In the event of a

dispute, Settling Defendants may change the form of the financial assurance only in accordance

with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

52. <u>Completion of the Remedial Action.</u>

      a. Within 90 days after Settling Defendants conclude that the Remedial Action

has been fully performed and the Performance Standards have been attained, Settling Defendants

shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants,

EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe

that the Remedial Action has been fully performed and the Performance Standards have been

attained, they shall submit a written report requesting certification to EPA for approval, with a

copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within

30 days of the inspection. In the report, a registered professional engineer and the Settling

Defendants' Project Coordinator shall state that the Remedial Action has been completed in full

satisfaction of the requirements of this Consent Decree. The written report shall include as-built

drawings signed and stamped by a professional engineer. The report shall contain the following

statement, signed by a responsible corporate official of Settling Defendants or the Settling

Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

If, after completion of the pre-certification inspection and receipt and review of the written

report, EPA, after reasonable opportunity to review and comment by the State, determines that

the Remedial Action or any portion thereof has not been completed in accordance with this

Consent Decree or that the Performance Standards have not been achieved, EPA will notify

Settling Defendants in writing of the activities that must be undertaken by Settling Defendants

pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

53. <u>Completion of the Work</u>.

a. Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M) have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully

performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of Settling Defendants or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

      b. If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review

and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

54.  In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 55, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, the Settling Defendants shall notify the EPA Response and Prevention Branch, Region 6.  Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

55.  Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent,

abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiffs).

## XVI. PAYMENTS FOR RESPONSE COSTS

56. Payments for Past and Interim Response Costs.

a. State Past Response Costs

Within 30 days of the Effective Date, Settling Defendants shall pay to the State $199,086.33 for State Past Response Costs. Of this sum, $100,000 shall be allocated to the Office of the Attorney General for attorneys fees and costs. If paid by check, the payment shall be mailed to the Chief, Natural Resources Division, Attorney General's Office, P.O. Box 12548, Austin, Texas 78711 and shall bear the identifying number "AG#9137803".

b. United States Past Response Costs

i. By Administrative Order on Consent concluded on March 31, 1994, Alcoa Inc. agreed to perform the Remedial Investigation and Feasibility Study ("RI/FS") and certain removal actions for the Site, and to reimburse EPA response costs in connection with the order. In the Matter of Alcoa (Point Comfort)/Lavaca Bay Superfund Site, U.S. EPA CERCLA Docket No. 6-11-94 ("the AOC"). The AOC was amended by agreement of the parties in a Modification concluded on September 27, 1995, to provide for prospective payment of EPA AOC response costs (as defined in the AOC) through a reimbursable special account ("Alcoa RI/FS RUB Account") established within the Hazardous Substance Trust Fund to receive funds dedicated to EPA RI/FS response costs for this Site. The Modification provides, inter alia, that "EPA shall remit and return to Respondent [Alcoa Inc.] the balance of funds, if any, in the Alcoa [RI/FS] RUB Account on the date of termination of this Consent Order." Modification, ¶ 106(d), p. 3.

44

ii. As of September 30, 2003, the RI/FS AOC had not been terminated. The Alcoa RI/FS RUB Account has not been closed and a final accounting has not been completed. EPA working papers indicate that as of September 30, 2003, the Alcoa RI/FS RUB Account contained an available balance of $228,266 together with accrued interest in the amount of $178,713.00, for a total of $406,979.

iii. EPA has incurred unreimbursed Past Response Costs through September 30, 2003, in the amount of $379,280. In addition, DOJ has incurred unreimbursed Past Response Costs in the amount of $25,446 for the same time period. The United States (EPA and DOJ) has total unreimbursed Past Response Costs through September 30, 2003, in the amount of $404,726.

iv. The United States and the Settling Defendants agree that $404,726 of funds remaining in the Alcoa RI/FS RUB Account shall be applied on or after the Effective Date of this Consent Decree to pay in full the United States' unreimbursed Past Response Costs.

v. The Parties agree that this Consent Decree supersedes and abrogates Paragraph 107.d. of the AOC as to disposition of the balance of funds in the Alcoa RI/FS RUB Account.

c. Interim Response Costs.

i. EPA and DOJ have incurred and will incur and continue to pay Interim Response Costs.

ii. EPA has initiated the process to close and render a final accounting for the Alcoa RI/FS RUB Account.

iii. The United States and the Settling Defendants agree that the balance of funds remaining in the Alcoa RI/FS RUB Account at the time the account is closed as shown

by the final, audited accounting, shall be applied to pay EPA's and DOJ's Interim Response Costs.

iv. EPA's Interim Response Costs shall be summarized in the form of an unreconciled Superfund Cost Recovery Package Imaging and Online System (SCORPIOS) Report and/or equivalent unreconciled EPA accounting summary.  DOJ's Interim Response Costs may be provided separately in summary form by DOJ or may be reflected as part of EPA's Interim Response Costs.

v.  If the balance in the Alcoa RI/FS RUB Account at the time the account is closed, as shown in the final, audited accounting, exceeds the amount of the unreimbursed Interim Response Costs, the remainder will be transferred from the Alcoa RI/FS RUB Account into the Alcoa Remedial Design/Remedial Action Special Account ("RD/RA Special Account") to be applied toward Future Response Costs and the Alcoa RI/FS RUB Account will be closed.

vi.  If the balance in the Alcoa RI/FS RUB Account at the time the account is closed, as shown in the final, audited accounting, is less than the amount of the Interim Response Costs, the remainder will be transferred from the Alcoa RI/FS RUB Account into the RD/RA Special Account to be applied toward the Interim Response Costs.  Within 30 days of the date of receipt of a demand from EPA for the remaining Interim Response Costs, Settling Defendants shall complete payment of the remaining Interim Response Costs in accordance with the Payment Procedures as specified by Subparagraph 56.d, provided that Settling Defendants shall have the right to seek additional information or invoke Dispute Resolution prior to the payment of such Interim Response Costs under the procedures set forth in Paragraph 57.

vii. The Parties agree that this Consent Decree supersedes and abrogates Paragraph 107.d. of the AOC as to disposition of the balance of funds in the Alcoa RI/FS RUB Account.

    d.  Payment Procedures.

       i.  Payment of Interim Response Costs, if required by Subparagraph 56.c.vi., shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number 2004V00667, EPA Site/Spill ID Number 06NC, and DOJ Case Number 90-11-3-655/2. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Texas, Victoria Division, following lodging of the Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

       ii.  At the time of payment, Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XXVI (Notices and Submissions).  Settling Defendants shall also send notice to the Chief, Cost Recovery Section, U.S. EPA Region 6 (6SF-AC), 1445 Ross Ave., Suite 1200, Dallas, TX 75202.

       iii.  The total amount to be paid by Settling Defendants pursuant to Subparagraph 56.c.vi, if any, shall be deposited in the RD/RA Special Account, within the EPA Hazardous Substance Trust Fund, to be retained and used to conduct or finance response actions at or in connection with the Site, to be transferred by EPA to the EPA Hazardous Substance Trust

Fund, or to be used in support of prior disbursements for cleanup activities at or in connection with this Site.

57. <u>Payments for Future Response Costs</u>.

a.  Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan.  Future Response Costs to be paid by Settling Defendants pursuant to this Paragraph shall be deposited in the RD/RA Special Account within the EPA Hazardous Substance Trust Fund to be retained and used to conduct or finance response actions at or in connection with the Site, to be transferred by EPA to the EPA Hazardous Substance Trust Fund, or to be used in support of prior disbursements for cleanup activities at or in connection with this Site.

b.  EPA has estimated that the amount of Future Response Costs that will be expended at this Site on an annual basis during construction of the Remedial Action will be $100,000.  Based on this estimate, within twenty (20) days after the Effective Date of this Consent Decree, Settling Defendants shall forward an initial payment of $100,000 to be deposited in the RD/RA Special Account, within the EPA Hazardous Substance Trust Fund, to be retained and used to conduct or finance response actions at or in connection with the Site. Payment shall be made by Electronic Funds Transfer ("EFT"), in accordance with EFT instructions provided by EPA, or by submitting a money order, cashier's check, or certified check payable to the EPA Hazardous Substance Trust Fund to:  U.S. Environmental Protection Agency, Region 6, P.O. Box 371099M, Pittsburgh, PA 15251.

c.  Settling Defendants shall clearly mark the check or other transaction record "Acct. #(Alcoa) 061J" and shall reference DOJ Case No. #90-11-3-655/2 and U.S.A.O. Case No. 2004V00667.

d.  Settling Defendants shall submit notice of such payment including a copy of EFT transmittal documentation, money order, cashier's check, or certified check to the Chief, Cost Recovery Section (6SF-AC), Superfund Division, U.S. Environmental Protection Agency Region 6, 1445 Ross Ave., Suite 1200, Dallas, TX 75202-2733, and to the Chief, Environmental Enforcement Section, U.S. Department of Justice, at the address specified in Paragraph 112.

e.  When EPA has expended direct and indirect Future Response Costs totaling approximately $80,000 (that is, when approximately $20,000 of available funds remain in the RD/RA Special Account), EPA will notify Settling Defendants.  At that time, EPA will provide an adjusted estimate, determined by the EPA RPM, of Future Response Costs to be expended in the future.  Periodically, but no less than annually, EPA will submit to Settling Defendants a summary of Future Response Costs expended from the RD/RA Special Account.  The Future Response Costs accounting summary shall be in the form of an unreconciled Superfund Cost Recovery Package Imaging and Online System (SCORPIOS) Report or equivalent unreconciled EPA accounting summary.

f.  If Settling Defendants need any financial information or work performed information about a specific cost line item on the SCORPIOS Report, Settling Defendants shall contact in writing the EPA RPM assigned to the Site to inquire about specific details.  The RPM, in consultation with the Chief of the Accounting Section, the Chief of the Cost Recovery Section, the Site attorney, or other Agency personnel as appropriate, shall within fourteen (14) days of such contact use his/her best efforts to provide the requested information.  After the expiration of this fourteen (14) day period, Settling Defendants may request that EPA prepare and certify a Cost Package for the costs in question.  The cost of preparing the Certified Cost Package shall be a Future Response Cost payable out of the RD/RA Special Account.

g.  Settling Defendants shall, within thirty (30) days of receipt of the notice and the Future Response Cost accounting summary described in Paragraph 57.e, remit to the account identified in and in accordance with the procedures described in Paragraph 57.b and c above, by EFT or by money order, certified or cashier's check, the amount stated in the notice, either the amount necessary to replenish the RD/RA Account to an adjusted estimate of Future Response Costs to be expended in the future, or the amount necessary to replenish the account to a balance of the estimated annual Future Response Costs of $100,000.  Settling Defendants shall provide notice of such payment in accordance with Paragraph 57.d above.  The due date for payment to replenish the RD/RA Special Account shall not be delayed by dispute resolution, a request for or provision of information about a specific cost line item, or a request for or preparation of a certified Cost Package.

h.  In the event that the RD/RA Special Account is depleted to an amount of $10,000 or less before EPA submits a notification and cost accounting summary to Settling Defendants, Settling Defendants agree, within thirty (30) days of notice from EPA, to remit $15,000 for deposit in the RD/RA Special Account in accordance with the procedure described in subparagraphs 57.b and c.  Notice of such remittance shall be made in accordance with subparagraph 57.d.  Settling Defendants shall remit the remaining amount to replenish the RD/RA Account to $100,000 or to the full amount of the RPM's estimate of Future Response Costs established pursuant to subparagraph 57.e.  Payment shall be made in accordance with the procedures outlined in subparagraphs 57.b, and notice given to EPA in accordance with subparagraphs 57.c and d.

i. EPA shall remit and return to Settling Defendants the balance of Future Response Cost funds paid by Settling Defendants, if any, in the RD/RA Special Account on the date of termination of this Consent Decree.

j. Settling Defendants may invoke the Dispute Resolution provisions of this Consent Decree regarding Future Response Costs only after Settling Defendants have made the inquiry of the EPA RPM outlined in Paragraph 57.f above, and the RPM has responded or failed to respond within the fourteen (14) day period. Settling Defendants agree to limit any disputes concerning Future Response Costs to accounting errors and the inclusion of costs outside the scope of this Consent Decree.

58. Settling Defendants may contest payment of any Future Response Costs under Paragraph 57 if they determine that the United States or the State has made an accounting error or if they allege that a cost item is outside the scope of this Consent Decree. Any objection to the Future Response Costs shall be made in writing within 30 days of receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. If the United States or the State prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued Interest) to the United States or the State, if State costs are disputed, in the manner described in subparagraphs 57.a-d unless such sums may be deducted from the RD/RA Special Account. If Settling Defendants prevail in dispute resolution of Future Response Costs, EPA will make adjustments to the RD/RA Special Account to reflect the correct amount determined in the resolution of the dispute. The dispute resolution procedures set forth in this Paragraph in conjunction with the

procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States and the State for their Future Response Costs.

59.   In the event that the payments required by Paragraph 56, Paragraph 57, or Paragraph 58 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance.   The Interest to be paid on the unpaid balance of Interim Response Costs or Future Response Costs shall begin to accrue on the date of the bill.   The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 79.   The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 57, as appropriate.   Interest shall not be payable on Future Response Costs pursuant to 42 U.S.C. § 9607(a) to the extent sufficient funds exist in the RD/RA Special Account to cover the expenditure when made.

## XVII.  INDEMNIFICATION AND INSURANCE

60.   Settling Defendants' Indemnification of the United States and the State.

a.   The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.   Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their

officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

b.  The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 60, and shall consult with Settling Defendants prior to settling such claim.

61.  Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract,

agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

62. Prior to commencing any on-site Work under this Consent Decree, Settling Defendants shall secure, and shall maintain in force until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 52.b. of Section XIV (Certification of Completion) commercial general liability insurance for bodily injury and property damage, including contractual liability insurance and automobile liability insurance, with limits of $2 million, combined single limit per occurrence and in the aggregate, for each coverage, naming as additional insureds the United States and the State. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, and annually thereafter on the anniversary of the Effective Date of this Consent Decree, Settling Defendants shall provide to EPA and the State certificates of such insurance. Respondents may satisfy the insurance limits specified herein with any combination of primary and excess/umbrella insurance policies. If Settling Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

63. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

64. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 6, within twelve (12) hours of when Settling Defendants first knew that the event might cause a delay.  Within three (3) days thereafter, Settling Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or

55

contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

65. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

66. If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's

notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the

effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs

63 and 64, above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not

to be a violation by Settling Defendants of the affected obligation of this Consent Decree

identified to EPA and the Court.

## XIX.  DISPUTE RESOLUTION

67.  Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  However, the procedures set forth in this Section

shall not apply to actions by the United States or the State to enforce obligations of the Settling

Defendants that have not been disputed in accordance with this Section.

68.  Any dispute which arises under or with respect to this Consent Decree shall in the

first instance be the subject of informal negotiations between the parties to the dispute.  The

period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless

it is modified by written agreement of the parties to the dispute.  The dispute shall be considered

to have arisen when one party sends the other parties a written Notice of Dispute.

69.  Statements of Position.

a.  In the event that the parties cannot resolve a dispute by informal negotiations

under the preceding Paragraph, then the position advanced by EPA shall be considered binding

unless, within ten (10) days after the conclusion of the informal negotiation period, Settling

Defendants invoke the formal dispute resolution procedures of this Section by serving on the

United States and the State a written Statement of Position on the matter in dispute, including,

but not limited to, any factual data, analysis or opinion supporting that position and any

supporting documentation relied upon by the Settling Defendants.  The Statement of Position

shall specify the Settling Defendants' position as to whether formal dispute resolution should

proceed under Paragraph 70 or Paragraph 71.

      b.  Within twenty one (21) days after receipt of Settling Defendants' Statement of

Position, EPA will serve on Settling Defendants its Statement of Position, including, but not

limited to, any factual data, analysis, or opinion supporting that position and all supporting

documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to

whether formal dispute resolution should proceed under Paragraph 70 or 71.  Within ten (10)

days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

      c.  If there is disagreement between EPA and the Settling Defendants as to

whether dispute resolution should proceed under Paragraph 70 or 71, the parties to the dispute

shall follow the procedures set forth in the paragraph determined by EPA to be applicable.

However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the

Court shall determine which paragraph is applicable in accordance with the standards of

applicability set forth in Paragraphs 70 and 71.

     70.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any

response action and all other disputes that are accorded review on the administrative record under

applicable principles of administrative law shall be conducted pursuant to the procedures set

forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

        a.  An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

        b.  The Director of the Superfund Division, EPA Region 6, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 70.a.  This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 70.c. and d.

        c.  Any administrative decision made by EPA pursuant to Paragraph 70.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendants' motion.

d. In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision, as the case may be, shall be on the administrative record compiled pursuant to Paragraph 70.

71. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a. Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 69, the Director of the Superfund Division, EPA Region 6 will issue a final decision resolving the dispute. For disputes regarding State Future Response Costs, the TCEQ Remediation Division Director will issue a final decision resolving the dispute. The decision of the Superfund Division Director (or TCEQ equivalent concerning State Future Response Costs) shall be binding on the Settling Defendants unless, within 10 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States (or the State) may file a response to Settling Defendants' motion.

b. Notwithstanding Paragraph O of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

72. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 81. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

73. Settling Defendants shall be liable to the United States, and separately to the State with respect to compliance with State cost reimbursement provisions, for stipulated penalties in the amounts set forth in Paragraphs 74-76 for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan or report approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree. "Compliance" by Settling Defendants for the State shall mean payment of Past and Future Response Costs as provided in Paragraphs 56 and 57.

74. <u>Stipulated Penalty Amounts - Work</u>.

a. The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 74.b:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $ 2,000 | 1st through 14th day |
| $ 5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond |

b. <u>Compliance Milestones</u>.

(1)  Failure to complete any component of the Remedial Action in accordance with the schedule found in the Consent Decree, Statement of Work, or Remedial Action Work Plan;

(2)  Failure to conduct studies or further work, or prepare work plans in accordance with Section VII (Remedy Review), Paragraphs 17, 19-21.

(3)  Failure to use approved quality assurance, quality control, and chain of custody procedures for all sampling and analysis undertaken pursuant to this Consent Decree and to provide split samples in accordance with Paragraph 23;

(4)  Failure to establish and maintain financial security in accordance with Section XIII (Assurance of Ability to Complete Work);

(5)  Failure to retain records as required by Section XXV (Retention of Records);

(6)  Failure to conduct/participate in community relations activities specified in the Community Relations Plan;

75.  Stipulated Penalty Amounts - Reports.

a.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports, other written documents, or items pursuant to Paragraphs 11, 12 (Remedial Action documents, draft and final), 14 (modifications to the SOW or work plans), 17 (Periodic Review), 21 (work plans for further response actions), 24 (sampling results), 33 (monthly and quarterly reports), and 39-44 (all plans, reports or other items):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 1,000 | 1st through 14th day |
| $ 4,000 | 15th through 30th day |
| $ 6,000 | 31st day and beyond |

Stipulated penalties at these amounts shall also be payable per violation per day to the State for failure to timely make payments due to the State pursuant to this Consent Decree under Section XVI (Payment for Response Costs).

76.  a.  In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 94 of Section XXI (Covenants Not to Sue by Plaintiffs), Settling Defendants shall be liable for a stipulated penalty in the amount of 20% of the costs to EPA of completing the work and 20% of TCEQ's costs associated with the State's statutory share of the work performed by EPA.

b.  For each day Settling Defendants continue activity after the EPA Project Manager orders cessation or halt of activities pursuant to Section XII (Project Coordinators), Settling Defendants shall pay a stipulated penalty of $32,500 per day.  The EPA Project Coordinator's order may be verbal or written;  all verbal orders shall be confirmed in writing by the EPA Project Coordinator within 48 hours after issuance.

77.  All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 6, under Paragraphs 70 or 71 or the State equivalent, under Paragraph 71 of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's or the State's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

78.  Following EPA's determination, after consultation with TCEQ, that Settling Defendants have failed to comply with a requirement of this Consent Decree,  EPA may give Settling Defendants written notification of the same and describe the noncompliance.  EPA and

64

the State may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

79. All penalties accruing under this Section shall be due and payable to the United States and/or the State within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties from EPA, or the State if the dispute pertains to the State's Future Response Costs, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution).  The payment shall be made in accordance with the following procedures:

a. All payments to the United States under this Section shall be paid by certified or cashier's check made payable to "EPA Hazardous Substances Superfund," shall be mailed to U.S. Environmental Protection Agency, Superfund Accounting, P.O. Box 360582M, Pittsburgh, PA 15251, Attn:  Collections Officer for Superfund Accounting, U.S. EPA Region 6, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #061J, the DOJ Case Number 90-11-3-655/2, and the name and address of the party making payment.  Copies of checks paid pursuant to this Section, and any accompanying transmittal letters, shall be sent to the United States as provided in Section XXVI (Notices and Submissions), and to the Chief, Cost Recovery Section (6SF-AC), U.S. EPA Region 6, 1445 Ross Avenue, Suite 1200, Dallas, TX 75202-2733.

b. All payments to the State under this Section shall be in the form of a certified check made payable to the "State of Texas."  The payment shall be mailed to the Chief, Natural Resources Division, Attorney General's Office, P.O. Box 12548, Austin, Texas 78711.  The

check shall indicate that the payment is for stipulated penalties and shall bear the identifying number "AG#9137803."

80. The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

81. Penalties shall continue to accrue as provided in Paragraph 77 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the State within 15 days of the agreement or the receipt of EPA's decision or order;

b. If the dispute is appealed to this Court and the United States or the State prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA and the State within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c. If the District Court's decision is appealed by Settling Defendants, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States or the State into an interest bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the State or the Settling Defendants to the extent that they prevail. The obligation to pay accrued penalties into an interest bearing escrow account, as set forth in this Paragraph 81.c. may be stayed during the pendency of any appeal by the posting of a supersedeas bond under Federal Rule of Civil Procedure 62(d).

82.  If Settling Defendants fail to pay stipulated penalties when due, the United States or the State may institute proceedings to collect the penalties, as well as Interest.  Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 79.

83.  Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

84.  Notwithstanding any other provision of this Section, the United States or the State may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFFS

85.  United States' Covenants.  In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 86, 87, and 93 of this Section, the United States covenants not to sue, or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 56.b of Section XVI (Payments for

67

Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 52 of Section XIV (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

86.  United States' Pre-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants to perform further response actions relating to the Site, or to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

(i)  conditions at the Site, previously unknown to EPA, are discovered, or

(ii)  information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

87.  United States' Post-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants to perform further response actions relating to the

Site, or to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(i)  conditions at the Site, previously unknown to EPA, are discovered, or

(ii)  information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.  For purposes of Paragraph 86, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 87, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

89.  State's Covenants.  In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 90, 91, and 93 of this Section, the State covenants not to sue, or to take administrative actions, against Settling Defendants pursuant to Section 107 of CERCLA and applicable state laws, including, but not limited to, Texas Health

and Safety Code, Chapter 361, and Texas Water Code, Chapters 7 and 26, relating to the Site.

Except with respect to future liability, these covenants not to sue shall take effect upon the

receipt by the State of the payments required by Paragraph 56.a of Section XVI (Payments for

Response Costs). With respect to future liability, these covenants not to sue shall take effect

upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 52 of

Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the

satisfactory performance by Settling Defendants of their obligations under this Consent Decree.

These covenants not to sue extend only to the Settling Defendants and do not extend to any other

person.

     90. <u>State's Pre-certification Reservations.</u> Notwithstanding any other provision of this

Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to

institute proceedings in this action or in a new action, or to issue an administrative order seeking

to compel Settling Defendants to perform further response actions relating to the Site, or to

reimburse the State for additional costs of response if, prior to Certification of Completion of the

Remedial Action:

         (i)     conditions at the Site, previously unknown to the TCEQ, are

                 discovered or

         (ii)    information, previously unknown to TCEQ, is received in whole or

                 in part,

and TCEQ determines that these previously unknown conditions or information together with

any other relevant information indicates that the Remedial Action is not protective of human

health or the environment.

91.  **State's Post-certification Reservations.**  Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants to perform further response actions relating to the Site, or to reimburse the State for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

     (i)     if conditions at the Site, previously unknown to TCEQ, are discovered, or

     (ii)    if information, previously unknown to TCEQ, is received, in whole or in part

and TCEQ determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

92.  For purposes of Paragraph 90, the information and the conditions known to TCEQ shall include only that information and those conditions known to TCEQ as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 91, the information and the conditions known to TCEQ shall include only that information and those conditions known to TCEQ as of the date of Certification of Completion of Remedial Action or set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by TCEQ pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

93.  <u>General reservations of rights</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenants not to sue.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants with respect to:

a.  claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b.  liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.  liability based upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

d.  liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.  criminal liability; and

f.  liability for violations of federal or state law which occur during or after implementation of the Remedial Action.

g.  liability, if any prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards,

but that cannot be required pursuant to Paragraph 14 (Modification of the SOW or Related Work Plans).

       h.  liability for costs that may be incurred in the future by the Agency for Toxic Substance and Disease Registry related to the Site.

     94.  <u>Work Takeover.</u>  In the event EPA determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary.  Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 70, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph.  Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).  In the event EPA assumes the performance of all or any portions of the Work as EPA determines necessary, costs incurred by the State pursuant to CERCLA or in cooperation with EPA in performing the Work shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

     95.  Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

96. <u>Covenant Not to Sue</u>.  Subject to the reservations in Paragraph 98, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Site, Past and Future Response Costs as defined herein, or this Consent Decree, including, but not limited to:

      a.  any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

      b.  any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

      c.  any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

97.  Except as provided in Paragraph 105 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 86, 87, 90, 91, and 93.b-d and g-h, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

98.  The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

99.  Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

100.  Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to the Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

a. the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

b. This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

### XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

101. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

102. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. The "matters addressed" in this settlement are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States,

the State, or any other person with respect to the Site. The "matters addressed" in this settlement do not include those response costs or response actions as to which the United States and the State have reserved their rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States or the State asserts rights against the Settling Defendants that come within the scope of such reservations.

103. The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

104. The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States and the State within 10 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

105. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiffs).

77

## XXIV. ACCESS TO INFORMATION

106.  Except as provided in Paragraph 107.b, Settling Defendants shall provide to EPA and the State, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendants shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

107.  <u>Business Confidential and Privileged Documents</u>.

a.  Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.