United States Courts
Southern District of Texas
FILED

MAR - 1 2005

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

UNITED STATES OF AMERICA
and STATE OF TEXAS

        Plaintiffs,

  v.

ALCOA INC. and ALCOA WORLD
ALUMINA L.L.C.

        Defendants.

CIVIL ACTION NO. _____ V-04- 119

## CONSENT DECREE
## FOR CERCLA RESPONSE ACTIONS AND RESPONSE COSTS

## TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
V.      GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . 17
VII.    REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . 23
IX.     ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . 26
X.      REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
XI.     EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . 34
XII.    PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
XIII.   ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . 38
XIV.    CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XV.     EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XVI.    PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XVII.   INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
XVIII.  FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
XIX.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
XX.     STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
XXI.    COVENANTS NOT TO SUE BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . 67
XXII.   COVENANTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . 74
XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . 76
XXIV.   ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
XXV.    RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
XXVI.   NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
XXVII.  EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXIX.   APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXX.    COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
XXXI.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
XXXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . 85
XXXIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
XXXIV.  TERMINATION OF ADMINISTRATIVE ORDER ON CONSENT . . . . . . . . . . . . . 86
XXXV.   FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>ALCOA INC., and ALCOA WORLD ALUMINA L.L.C.<br><br><br>Defendants. | CIVIL ACTION NO. _____ |

## CONSENT DECREE
## FOR CERCLA RESPONSE ACTIONS AND RESPONSE COSTS

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), the United States Department of Interior, acting through the United States Fish and Wildlife Service ("DOI/FWS") and the National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce; and the State of Texas ("State") on behalf of the Texas Commission on Environmental Quality ("TCEQ"), the Texas General Land Office ("GLO"), and the Texas Parks

and Wildlife Department ("TPWD"), filed a Complaint in this matter pursuant to Sections 104, 106, 107, and 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604, 9606, 9607, and 9613(b), and Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321.

B.     The United States in its Complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Alcoa/Lavaca Bay Superfund Site ("Site," "Lavaca Bay Site") in Calhoun County, Texas, together with accrued interest; (2) performance of studies and response work by Alcoa Inc. f/k/a Aluminum Company of America ("Alcoa Inc.") and its affiliate Alcoa World Alumina L.L.C. ("Settling Defendants," as more specifically defined in Section IV, *infra*) at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"); and (3) natural resource damages, including past and future costs incurred by NOAA and DOI/FWS (the "Federal Trustees") as a result of these damages.  The State has also asserted claims against the Settling Defendants in this Court alleging that the Settling Defendants are liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and Texas law.  This Consent Decree and the Consent Decree for Natural Resource Damages filed contemporaneously herewith resolve all claims in the Complaint.

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State in May of 2002 of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and to be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the DOI/FWS, NOAA, and the State in May of 2002 of negotiations with potentially

responsible parties regarding the release of hazardous substances that may have resulted in injury

to the natural resources under Federal and State trusteeship and encouraged the Federal and State

Trustees to participate in the negotiation of this Consent Decree.  The State and Federal Trustees

have conducted separate negotiations with the Settling Defendants concerning injury to natural

resources at this Site.

E.      The Settling Defendants that have entered into this Consent Decree do not admit

any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the

Complaint, nor do they acknowledge that the release or threatened release of hazardous

substances at or from the Site constitutes an imminent or substantial endangerment to the public

health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on

the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the

Federal Register on February 23, 1994, 59 Fed. Reg. 8724.

G.      In response to a release or a substantial threat of a release of a hazardous

substance at or from the Site, the Aluminum Company of America commenced under an

Administrative Order on Consent ("AOC") concluded on March 31, 1994,  a Remedial

Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.  In the

Matter of Alcoa (Point Comfort)/Lavaca Bay Superfund Site, U.S. EPA CERCLA Docket No. 6-

11-94.  The AOC was amended by agreement of the parties in a Modification concluded on

September 27, 1995, to provide for prospective payment of EPA AOC response costs (as defined

in the AOC) through a reimbursable special account ("RI/FS RUB Account") established within

3

the Hazardous Substance Trust Fund to receive funds dedicated to EPA RI/FS response costs for

this Site.  The Modification provides, *inter alia*, that "EPA shall remit and return to Respondent

[Alcoa Inc.] the balance of funds, if any, in the ALCOA RUB Account on the date of termination

of this Consent Order."  Modification, ¶106(d), p.3.

      H.     Prior to entry of the AOC, EPA, by letter dated May 21, 1992, transmitted to

Alcoa Inc. a proposed Administrative Order on Consent, pursuant to Section 3008(h) of the

Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(h)(the "3008(h) Order"),

to require corrective action in response to alleged releases of hazardous waste into the

environment at the Alcoa/Point Comfort Operations Plant ("Plant").  The 3008(h) Order was not

entered by EPA.  Instead, corrective action and response measures deemed necessary to protect

human health or the environment based on releases at the Plant have been addressed under

CERCLA and, as a result, the claims in the 3008(h) Order have been resolved by the entry of the

AOC and this Consent Decree.

      I.     On June 6, 1994, EPA concluded a Cooperative Management Agreement

("CMA") for the Lavaca Bay Site with the State and with NOAA (on behalf of itself and DOI) to

provide a mechanism for effective coordination of all of the interests and concerns of the State

and Federal agencies involved with the Lavaca Bay Site.  The CMA provided for participation by

the State Trustees, including the GLO, the TPWD, and the Texas Natural Resource Conservation

Commission ("TNRCC" – now known as TCEQ), as well as TNRCC in its capacity as the State

Superfund agency in oversight of the RI/FS and removal action conducted by Alcoa Inc. under

the 1994 AOC with EPA.

      J.     Alcoa Inc. transferred ownership but not operational control of the Plant to its

affiliate Alcoa World Alumina L.L.C. in 1994.

K. On August 6, 1997, EPA published for comment an Engineering Evaluation/Cost Analysis ("EE/CA") for a non-time-critical ("NTC") removal action at the Dredge Island on the Site.  The proposed removal action consisted of relocating the contents of the Dredge Management Placement Areas containing elevated levels of mercury into the Gypsum Placement Areas ("GPAs").  In addition, approximately 93,000 cubic yards of soils having concentrations greater than 0.7 mg/kg total mercury were returned to the GPAs.  The south slope of the island was to be armored to protect against erosion and wash-out in the event of hurricane or other severe storm.  Comments on the EE/CA were accepted from August 6 to September 22, 1997. EPA issued an Action Memorandum authorizing the removal action on April 30, 1998.  Alcoa Inc. undertook the work under EPA oversight pursuant to the AOC.  The removal action was completed in April of 2001.

L. Alcoa Inc. completed a Remedial Investigation ("RI") Report on March 6, 2000, and a Feasibility Study ("FS") Report in May 2001.

M. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 22, 25, and 26, 2001, in major local newspapers of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

N. The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on December 20, 2001, on which the State has given its concurrence.  The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to

the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

O.    Based on the information presently available to EPA and the State, EPA and the State believe that the Work (as defined below) will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

P.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

Q.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III. PARTIES BOUND

2.  This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.  Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

### IV. DEFINITIONS

4.  Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 113.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs not inconsistent with the NCP, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 94 of Section XXI. Future Response Costs shall also include all costs incurred in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all litigation costs to the extent the United States prevails therein. Future Response Costs shall also include all Interim Response Costs.

"Interim Response Costs" shall mean all costs not inconsistent with the NCP, including direct and indirect costs, (a) paid by EPA in connection with the Site between September 30,

8

2003 and the Effective Date, or (b) incurred by EPA and DOJ prior to the Effective Date but paid by EPA after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

"Operations, Maintenance, and Monitoring Plans ("OMMPs") shall mean plans for operation and maintenance, and monitoring of certain components of the Remedial Action.  The OMMPs have already been completed and are made a part of this Consent Decree as attachments to the Statement of Work

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Texas, and the Settling Defendants.

"Past Response Costs" shall mean all costs not inconsistent with the NCP, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 30, 2003, the sum of which costs the Parties agree is $404,726.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Sections 8 and 12 of the ROD.

"Plaintiffs" shall mean the United States and the State of Texas.

"Plant" shall mean the Alcoa/Point Comfort Operations Plant.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on December 20, 2001, by the Director of the Superfund Division (delegate of the Regional Administrator), EPA Region 6, and all attachments thereto. The ROD is attached as Appendix A.

"Released Party" shall mean Alcoa World Alumina L.L.C., a limited liability company incorporated in the State of Delaware, which acquired ownership but not operational control of the Plant in 1994.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

10

"Remedial Design" shall mean the Remedial Design Reports for the Remedial Action which have been completed and made a part of this Consent Decree as attachments to the Statement of Work (Appendix B).

"Response Costs" shall mean all costs not inconsistent with the NCP that the United States or the State incur in connection with this Site, more particularly defined in this Section as "Future Response Costs," "Interim Response Costs," "Past Response Costs," "State Future Response Costs," "State Interim Response Costs," and "State Past Response Costs."

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean 1) Alcoa Inc., a corporation incorporated in the Commonwealth of Pennsylvania and doing business at Point Comfort, Texas, which corporation was formerly known as Aluminum Company of America, and 2) Alcoa World Alumina L.L.C., a limited liability company incorporated in the State of Delaware, which has acquired ownership but not operational control of the Plant.

"Site" shall mean the Alcoa/Lavaca Bay Superfund Site, generally consisting of the Plant, Dredge Island, Formosa Tract, and portions of Lavaca Bay, Cox Bay, Cox Creek, Cox Cove, Cox Lake (Cox Creek, Cox Cove, and Cox Lake are also known as Huisache Creek, Cove and Lake) and western Matagorda Bay located in Calhoun County, Texas, and areas containing hazardous substances depicted generally on the map attached as Appendix C.

"State" shall mean the State of Texas.

"State Future Response Costs" shall mean all costs not inconsistent with the NCP, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited

to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 94 of Section XXI. State Future Response Costs shall also include all costs incurred in connection with Section XIX (Dispute Resolution) and all litigation costs to the extent the State prevails therein. State Future Response Costs shall also include all State Interim Response Costs.

"State Interim Response Costs" shall mean all costs not inconsistent with the NCP, including direct and indirect costs, (a) paid by the State in connection with the Site by the TCEQ between January 1, 2002, and by the Office of the Attorney General between June 30, 2004, and the Effective Date, or (b) incurred prior to the Effective Date but paid by the State after that date.

"State Past Response Costs" shall mean all costs not inconsistent with the NCP, including, but not limited to, direct and indirect costs, that the State paid at or in connection with the Site through December 31, 2001 for the TCEQ and through June 30, 2004 for the Office of the Attorney General, the sum of which costs the Parties agree is $199,086.33 ($99,086.33 TCEQ costs + $100,000 Attorney General's Office costs).

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"TCEQ" shall mean the Texas Commission on Environmental Quality and any successor departments or agencies of the State.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) or (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33).

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

"Working Day(s)" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

## V. GENERAL PROVISIONS

5. <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendants as provided in this Consent Decree.

6. <u>Commitments by Settling Defendants</u>.

a. Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  Settling Defendants shall also reimburse the United States and the State for Response Costs as provided in this Consent Decree.

b. The obligations of Settling Defendants to implement the requirements of this Consent Decree are joint and several. In the event of the insolvency or other failure of any one Settling Defendant to implement the requirements of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

c. Settling Defendant Alcoa Inc. shall have primary responsibility to fulfill all requirements of this Consent Decree including, but not limited to, financing and performing the Work in accordance with this Consent Decree and reimbursing the Response Costs of the United States and the State as provided in this Consent Decree. In the event that Alcoa Inc. fails to perform one or more of its obligations under this Consent Decree, the United States, after consultation with the State, shall give notice to the Released Party of its intention to seek performance under the Consent Decree by the Released Party. The notice shall state the specific requirements under the Consent Decree that Alcoa Inc. has failed to perform and the schedule under which such performance must be completed. If within thirty (30) days of such notice, Alcoa Inc. has not (a) performed the specific requirements or (b) reached agreement with the United States on a schedule for performance, or (c) invoked Dispute Resolution pursuant to Section XIX (Dispute Resolution), the Released Party shall perform such obligation(s) if the United States, or the State, so directs in writing. If Alcoa Inc. has invoked Dispute Resolution pursuant to Section XIX (Dispute Resolution) with regard to the obligation(s) at issue, then the thirty (30) day period shall not begin to run until the dispute resolution process has been completed. In the event that the United States invokes its right to direct that the Released Party perform Alcoa Inc.'s obligations under this Consent Decree, the Released Party shall assume all rights and responsibilities of Alcoa Inc. under this Consent Decree. Invocation by the United States of its right to request that the Released Party perform Alcoa Inc.'s obligations under this

Consent Decree, shall not excuse performance by Alcoa Inc. and shall not waive the right of EPA

and/or the United States to enforce the requirements of this Consent Decree against Alcoa Inc.

and the State's right to require Alcoa Inc. to perform its obligations to the State.

     d. The Released Party shall have the same rights and protections afforded to

Alcoa Inc. under this Consent Decree.

     7. <u>Compliance With Applicable Law</u>. All activities undertaken by Settling Defendants

pursuant to this Consent Decree shall be performed in accordance with the requirements of all

applicable federal and state laws and regulations. Settling Defendants must also comply with all

applicable or relevant and appropriate requirements of all Federal and State environmental laws

as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree,

if approved by EPA, shall be considered to be consistent with the NCP.

     8. <u>Permits</u>.

     a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the

NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e.,

within the areal extent of contamination or in very close proximity to the contamination and

necessary for implementation of the Work). Where any portion of the Work that is not on-site

requires a federal or state permit or approval, Settling Defendants shall submit timely and

complete applications and take all other actions necessary to obtain all such permits or approvals.

     b. The Settling Defendants may seek relief under the provisions of Section XVIII

(Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting

from a failure to obtain, or a delay in obtaining, any permit required for the Work.

     c. This Consent Decree is not, and shall not be construed to be, a permit issued

pursuant to any federal or state statute or regulation.

9. <u>Notice to Successors-in-Title.</u>

      a. With respect to any property owned or controlled by the Settling Defendants that is located within the Site, within 15 days after the entry of this Consent Decree, the Settling Defendants shall submit to EPA for review and approval a notice to be filed with the Recorder's Office, Calhoun County, State of Texas, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on December 20, 2001, and that Settling Defendants have entered into a Consent Decree requiring implementation of the remedy. Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Settling Defendants shall record the notice within 10 days of EPA's approval of the notice. The Settling Defendants shall provide EPA with a certified copy of the recorded notice within 20 days of recording such notice. The Settling Defendants may file a notice of completion after all Work has been completed in accordance with Paragraph 53.

      b. Unless all Work has been completed in accordance with Paragraph 53, at least 30 days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least 30 days prior to such conveyance, the Settling Defendant conveying the interest shall

16

also give written notice to EPA and the State of the proposed conveyance, including the name

and address of the grantee, and the date on which notice of the Consent Decree, access

easements, and/or restrictive easements was given to the grantee.

     c.   In the event of any such conveyance, the Settling Defendants' obligations

under this Consent Decree, including, but not limited to, the obligation to provide or secure

access and institutional controls, as well as to abide by such institutional controls, pursuant to

Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met

by the Settling Defendants.  In no event shall the conveyance release or otherwise affect the

liability of the Settling Defendants to comply with all provisions of this Consent Decree, absent

the prior written consent of EPA.  If the United States approves, the grantee may perform some

or all of the Work under this Consent Decree.

### VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

   10.   Selection of Supervising Contractor.

     a.   All aspects of the Work to be performed by Settling Defendants pursuant to

Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII

(Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this

Consent Decree shall be under the direction and supervision of the Supervising Contractor, the

selection of which shall be subject to disapproval by EPA after a reasonable opportunity for

review and comment by the State.  In the event Settling Defendants' selected Supervising

Contractor has not been approved prior to lodging of this Consent Decree, within 20 days after

the lodging of this Consent Decree, Settling Defendants shall notify EPA and the State in writing

of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.

With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall

demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC

E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection

and Environmental Technology Programs," (American National Standard, January 5, 1995), by

submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP

should be prepared in accordance with "EPA Requirements for Quality Management Plans

(QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time

thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants

shall give such notice to EPA and the State and must obtain an authorization to proceed from

EPA, after a reasonable opportunity for review and comment by the State, before the new

Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

      b. If EPA disapproves a proposed Supervising Contractor, EPA will notify

Settling Defendants in writing. Settling Defendants shall submit to EPA and the State a list of

contractors, including the qualifications of each contractor, that would be acceptable to them

within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will

provide written notice of the names of any contractor(s) that it disapproves and an authorization

to proceed with respect to any of the other contractors. Settling Defendants may select any

contractor from that list that is not disapproved and shall notify EPA and the State of the name of

the contractor selected within 21 days of EPA's authorization to proceed.

      c. If EPA fails to provide written notice of its authorization to proceed or

disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from

meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree,

18

Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

11. Remedial Design.

The final Remedial Design Reports ("RDRs"), and Operations, Maintenance, and Monitoring Plans ("OMMPs"), approved by EPA, are incorporated into and enforceable under the Consent Decree as attachments to the Statement of Work at Appendix B.

12. Remedial Action.

a. Within 30 days after lodging of this Consent Decree, or (in the event that Settling Defendants' Supervising Contractor has not been approved prior to lodging), within thirty (30) days after EPA approval of the Supervising Contractor, Settling Defendants shall submit to EPA and the State a work plan ("Remedial Action Work Plan") for the performance of the Remedial Action at the Site. The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the final EPA-approved RDRs and OMMPs attached to the SOW. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b. The Remedial Action Work Plan shall address all activities, selection of methodologies, plans, and schedules required by the Statement of Work. The Remedial Action Work Plan shall also include a schedule for implementation of all components of the Remedial

19

Action in the Statement of Work and shall identify the initial formulation of the Settling

Defendants' Remedial Action Project Team (including, but not limited to, the Supervising

Contractor).

   c.  Upon approval of the Remedial Action Work Plan by EPA, after a reasonable

opportunity for review and comment by the State, Settling Defendants shall implement the

activities required under the Remedial Action Work Plan.  The Settling Defendants shall submit

to EPA and the State all plans, submittals, or other deliverables required under the approved

Remedial Action Work Plan in accordance with the approved schedule for review and approval

pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise

directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at

the Site prior to approval of the Remedial Action Work Plan.

  13.  The Settling Defendants shall continue to implement the Remedial Action and O&M

until the Performance Standards are achieved and for so long thereafter as is otherwise required

under this Consent Decree.

  14.  <u>Modification of the SOW or Related Work Plans</u>.

   a.  If EPA, after consultation with the TCEQ, determines that modification to the

work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to

achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of

the remedy set forth in the ROD, EPA may require that such modification be incorporated in the

SOW and/or such work plans, provided, however, that a modification may only be required

pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected

in the ROD.

b.  For the purposes of this Paragraph 14 and Paragraphs 52 and 53 only, the "scope of the remedy selected in the ROD" is the collection of response actions to be conducted on the Bay System, the Chlor-Alkali Process Area, and the Former Witco Area, as specifically described in the ROD at Section 12, "Selected Remedy."

c.  If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 70 (record review).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.  Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.  Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.  Settling Defendants acknowledge and agree that nothing in this Consent Decree; the SOW; the Remedial Design Reports; the Operations, Maintenance and Monitoring Plans; or Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW, the Work Plans, and other EPA-approved plans will achieve the Performance Standards.

16.  Settling Defendants shall, prior to any off-site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

21

a.  The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b.  The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction.  The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

c.  Before the initial shipment of any hazardous substances, pollutants, or contaminants from the Site generated as a result of the Remedial Action required under this Consent Decree to an off-site location, and annually thereafter, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. § 300.440.  Settling Defendants shall not knowingly send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that does not comply with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

17. Periodic Review.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is

protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18. <u>Selection of Further Response Actions</u>.  If EPA, after consultation with the TCEQ, determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19. <u>Opportunity To Comment</u>.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20. <u>Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 86 or Paragraph 87 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 86 or Paragraph 87 of Section XXI (Covenants Not To Sue by Plaintiffs) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to the whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 (record review).

21. <u>Submissions of Plans</u>.  If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA and TCEQ for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA, after consultation with the TCEQ, in accordance with the provisions of this Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.  Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendants shall include in contracts with laboratories utilized by Settling Defendants in implementing this Consent Decree contractual provisions for the benefit of EPA and the State providing EPA and the State personnel and their authorized representatives with access at reasonable times to such laboratories.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA

24

pursuant to the QAPP for quality assurance monitoring.  Settling Defendants shall ensure that the

laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree

perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of

those methods which are documented in the "Contract Lab Program Statement of Work for

Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis,"

dated February 1988, and any amendments made thereto during the course of the implementation

of this Consent Decree; however, upon approval by EPA, after opportunity for review and

comment by the State, the Settling Defendants may use other analytical methods which are as

stringent as or more stringent than the CLP- approved methods.  Settling Defendants shall ensure

that all laboratories they use for analysis of samples taken pursuant to this Consent Decree

participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendants shall only use

laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994,

"Specifications and Guidelines for Quality Systems for Environmental Data Collection and

Environmental Technology Programs," (American National Standard, January 5, 1995), and

"EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March

2001) or equivalent documentation as determined by EPA.  EPA may consider laboratories

accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as

meeting the Quality System requirements.  Settling Defendants shall ensure that all field

methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent

Decree will be conducted in accordance with the procedures set forth in the QAPP approved by

EPA.

23.  Upon request, the Settling Defendants shall allow split or duplicate samples to be

taken by EPA and the State or their authorized representatives.  Settling Defendants shall notify

EPA and the State not less than 14 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA and the State shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

24. Settling Defendants shall submit two hard copies to EPA, one hard copy to the State, and one electronic copy, if available, each to the EPA and the State, of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25. Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

26. To the extent that the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by a Settling Defendant, such Settling Defendant shall:

a. commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 94 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendants' compliance with this Consent Decree; and

(10)     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.  commencing on the date of lodging of this Consent Decree,

(1)  refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the

remedial measures to be performed pursuant to this Consent Decree, provided that, in recognition of Settling Defendants' ongoing operations at the Plant, the foregoing use restriction shall not be considered breached as long as Settling Defendants conduct operations, management and maintenance of the Plant in a manner that minimizes, to the extent practicable, interference with ongoing response actions under this Consent Decree and notifies EPA of any Plant operations or activities that may interfere with scheduled actions or data collection under this Consent Decree in accordance with Paragraph 34; and

   (2)  maintain as industrial the land use for the areas of the Site identified in the ROD as the Chlor-Alkali Process Area soils and the Former Witco Area soils.

   c.  if required by EPA, execute and record in the Recorder's Office of Calhoun County, State of Texas, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b of this Consent Decree. The Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives and/or (ii) the State and its representatives. If EPA, after consultation with the TCEQ, determines that an easement or enforceable land/water use restriction is necessary, EPA shall notify Settling Defendants, who shall, within 45 days of notification by EPA, submit to EPA and the State for review and approval with respect to such property:

   (1)  A draft easement that is enforceable under the laws of the State of Texas, and

(2)  a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are nonexclusive utility or right of way easements or otherwise approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder's Office of Calhoun County.  Within 30 days of recording the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps.  If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

27.  The Settling Defendants may cancel and rescind any easement for access referred to in Paragraph 26 after all Work has been completed in accordance with Paragraph 53.

28.  For purposes of Paragraph 26.c of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of an agreement to release or subordinate a prior lien or encumbrance.  If Settling Defendants are unable to obtain an agreement pursuant to Paragraph 26.c.(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree within

29

45 days after the notification in Paragraph 26.c, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26.c of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid for just compensation.

29.  If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall provide information to EPA and the State and cooperate with EPA's and the State's efforts to secure such governmental controls.

30.  Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulation.

31.  Prior to receiving a Certificate of Completion of the Remedial Action pursuant to Paragraph 52 of this Consent Decree, the Settling Defendants shall submit to EPA and the TCEQ for approval deed record documents sufficient to implement the institutional controls specified in the ROD for the soils in the Chlor-Akali Process Area and the Former Witco Area, or other plan approved by EPA pursuant to Paragraph 39, to ensure long-term protectiveness of the remedy for

filing in the County Records of Calhoun County (or other county, if appropriate), Texas.  The deed records shall:

a.  identify with particularity the location of caps, barriers, and containment systems constructed as part of the Remedial Action to notify future purchasers or users of the property that excavation in these areas may cause a release of hazardous substances to the environment.

b.  restrict the construction of any buildings, wells, pipes, roads, ditches, fences, channels, cables, or any other structures – fixtures or otherwise – by any person in a manner not consistent with the ROD, including but not limited to, any action that would disturb the soil or capped sediments, such as digging holes, driving pilings, dredging, trenching (as for pipe or cable), engaging in geophysical exploration, or any other action that could compromise the integrity of the capping or thin-capping constructed on the Site and/or disturb other components of prior response actions conducted on this Site or the Remedial Action performed pursuant to this Consent Decree in a manner not consistent with the ROD.

32.  Within fourteen days after approval by EPA, and a reasonable opportunity for review and comment by the State, of the deed record documents prepared by Settling Defendants pursuant to Paragraph 31, the Settling Defendants shall:

a.  for property owned or controlled by the Settling Defendants, file the deed record documents in the County Records of Calhoun County (or other county, as appropriate), Texas;

b.  for property owned by persons or entities other than Settling Defendants, provide the documents to EPA for transmittal to the relevant property owners for filing in the County Records of Calhoun County (or other county, as appropriate), Texas.

## X. REPORTING REQUIREMENTS

33.  In addition to any other requirement of this Consent Decree, Settling Defendants

shall submit two hard copies to EPA, one hard copy to the State, and one electronic copy, if

available, each to EPA and the State, of written monthly progress reports that: (a) describe the

actions which have been taken toward achieving compliance with this Consent Decree during the

previous month; (b) include a summary of all results of sampling and tests and all other data

received or generated by Settling Defendants or their contractors or agents in the previous month;

(c) identify all work plans, plans and other deliverables required by this Consent Decree

completed and submitted during the previous month; (d) describe all actions, including, but not

limited to, data collection and implementation of work plans, which are scheduled for the next

six weeks and provide other information relating to the progress of construction, including, but

not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information

regarding percentage of completion, unresolved delays encountered or anticipated that may affect

the future schedule for implementation of the Work, and a description of efforts made to mitigate

those delays or anticipated delays; (f) include any modifications to the work plans or other

schedules that Settling Defendants have proposed to EPA or that have been approved by EPA;

and (g) describe all activities undertaken in support of the Community Relations Plan during the

previous month and those to be undertaken in the next six weeks.  Settling Defendants shall

submit these progress reports to EPA and the State by the tenth day of every month following the

lodging of this Consent Decree until completion of construction of the remedial action, as

determined by EPA.  After completion of construction until EPA notifies the Settling Defendants

pursuant to Paragraph 53 of Section XIV (Certification of Completion), Settling Defendants shall

submit the required reports on a quarterly basis, or less frequently if approved by EPA after a

reasonable opportunity to comment by the State.  If requested by EPA or the State, Settling

Defendants shall also provide briefings for EPA and the State to discuss the progress of the

Work.

34.  The Settling Defendants shall notify EPA and the State of any material change in the

schedule described in the monthly progress report for the performance of any activity, including,

but not limited to, data collection and implementation of work plans, no later than seven days

prior to the performance of the activity.

35.  Upon the occurrence of any event during performance of the Work that Settling

Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the

Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall

within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the

Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project

Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project

Coordinator is available, the Response and Prevention Branch, Region 6, United States

Environmental Protection Agency.  These reporting requirements are in addition to the reporting

required by CERCLA Section 103 or EPCRA Section 304.

36.  Within 20 days of the onset of such an event, Settling Defendants shall furnish to

Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth

the events which occurred and the measures taken, and to be taken, in response thereto.  Within

30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth

all actions taken in response thereto.

37.  Settling Defendants shall submit three hard copies and one electronic copy of all

plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial

Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Defendants shall simultaneously submit two hard copies and one electronic copy of all such plans, reports and data to the State.  Upon request by EPA Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

38.  All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

39.  After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 15 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

40.  In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 39(a), (b), or (c), Settling Defendants shall proceed to take any action required by

34

the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 39(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

41. Resubmission of Plans.

a. Upon receipt of a notice of disapproval pursuant to Paragraph 39(d), Settling Defendants shall, within 15 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the 15-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 42 and 43.

b. Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 39(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

42. In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as

modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

43. If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX (Stipulated Penalties).

44. All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

45. Within 20 days of lodging this Consent Decree, Settling Defendants, the State and EPA will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) Working Days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The

36

Settling Defendants' Project Coordinator shall be subject to disapproval by EPA, after consultation with the TCEQ, and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

46. Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and Federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

47. EPA's Project Coordinator and the Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis, unless otherwise agreed to by such Project Coordinators. After completion of construction, as determined by EPA, the Project Coordinators may agree to meet quarterly, or on a less frequent basis than monthly. The State's Project Coordinator may attend the Project Coordinators' meeting.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

48. Within 30 days of entry of this Consent Decree, Settling Defendants shall establish and maintain financial security in the amount of $11,400,000 in one or more of the following forms:

    a. A surety bond guaranteeing performance of the Work;

    b. One or more irrevocable letters of credit equaling the total estimated cost of the Work;

    c. A trust fund;

    d. A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with Settling Defendants;

    e. A demonstration that Settling Defendants satisfy the requirements of 40 C.F.R. Part 264.143(f); or

    f. Other financial mechanism acceptable to EPA, after a reasonable opportunity for review and comment by the State, funded sufficiently to perform the work and other obligations required under this Consent Decree.

49. If the Settling Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 48.d of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 48.d or 48.e, they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA, after a reasonable

38